**UNITED SLATE, TILE AND COMPOSITION ROOFERS, DAMP AND WATERPROOF WORKERS ASSOCIATION, LOCAL 307, et al., Plaintiffs-Appellees,**

v.

**G & M ROOFING AND SHEET METAL COMPANY, INC., Defendant-Appellant.**

**Nos. 82–3633, 83–3086.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1983.

Decided April 13, 1984.

Jones, Canton, Ohio, for defendant-appellant.

James DeLeone, John L. Duffey, argued, Topper, Alloway, Goodman, Deleone & Duffey, Columbus, Ohio, for plaintiffs-appellees.

Before LIVELY, Chief Circuit Judge, KRUPANSKY, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

G & M Roofing and Sheet Metal Company, Inc. (G & M), appeals the decision entered below, upon a trial to the court, that G & M violated the Labor-Management Relations Act (L.M.R.A.), 29 U.S.C. § 185, by breaching a contract provision concerning wages, and that G & M also violated the Fair Labor Standards Act (F.L.S.A.), 29 U.S.C. § 207, by withholding overtime wages from six specific workers. Following the entry of judgment in favor of the union, the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307 (Local 307), the district court also awarded Local 307 $28,-079.75 as its attorney fees.

The facts, as found by the trial judge in an exhaustive memorandum opinion, established that in May of 1975, G & M decided to open a branch facility in Cambridge, Ohio. Since the firm's inception in 1966, it had been located in the Canton-Louisville area and had maintained a contract with Local 88 of the roofers union, which was based in Cleveland, Ohio and had jurisdiction over northeastern Ohio counties. G & M was aware that Local 307 had jurisdiction over Cambridge workers.

In early July 1975, G & M's founder and board chairman, Jack George (George), met with Local 307 bargaining representative Paul Arnett (Arnett) at G & M's Cambridge office. The subject of the meeting was the company's Cambridge operation; George sought Arnett's assurances that Local 307 could provide a sufficient number of workers for G & M's Cambridge plant. Arnett wanted G & M's agreement to the collective bargaining contract then in force be-

Roger L. Sabo, argued, Columbus, Ohio, Charles A. Morgan, Amerman, Burt &

tween the union and Cambridge contractors. Because it was being printed, Arnett could not produce a copy of the collective bargaining agreement at that meeting, but the trial court found, upon Arnett's testimony, that George had orally agreed to adhere to the bargaining contract.

Approximately one week subsequent to the meeting, Arnett returned to G & M's Cambridge office with a printed copy of the contract and with a supplemental contract which provided for automatic cost-of-living adjustments to wages. G & M vice president Bill Krejci signed the supplemental agreement and returned it by mail to Arnett. The printed copy of the contract was not executed by G and M, nor was it returned to Arnett. However, G & M appears as a signatory in the printed and bound 1976 master contract.

Upon these facts, the trial court concluded that G & M's Cambridge operations were bound during 1975 through March 1, 1976 (the date the 1976 contract was effective) by the bargaining agreement negotiated with Local 307. Based upon that conclusion, and the provisions of the contract, the court found the following breaches:

1. G & M failed to pay the correct hourly rate for journeymen, helpers, foremen and for those engaged in "hot pitch" work;

2. G & M failed to acknowledge or compensate as overtime all of the hours worked outside of the contractually specified work day of 8 a.m. to 4:30 p.m.; and,

3. G & M failed to pay forty cents per hour worked to Local 307's pension fund.

The second statutory claim, for violation of the Fair Labor Standards Act, seeks to recover overtime compensation not paid to individual workers, liquidated damages equal to the unpaid overtime, and attorney fees. The lower court, relying upon the previously delineated findings of fact, concluded that G & M had violated 29 U.S.C. § 207. However, the court declined to duplicate the compensation to the workers already awarded by virtue of the decision in favor of the union and further declined to award liquidated damages. This conclu-

sion was based upon the court's findings that G & M, albeit erroneously, believed the Cambridge workers were to be compensated pursuant to the agreement in force between the company and its Canton Union Local. That agreement permitted the company to require workers to report early to a job site without accruing overtime. Thus, G & M's withholding of overtime under similar circumstances in Cambridge was incorrect but did not give rise to liquidated damages.

In a separate proceeding conducted subsequent to entry of judgment in the amount of $37,480.00 for all the plaintiffs, the court considered the claim for attorney fees pursuant to the Fair Labor Standards Act. Inasmuch as attorney fees are mandatory under the relevant statute, 29 U.S.C. § 216(b), the evidentiary hearing focused solely upon the amount to be awarded. The court awarded fees of $28,079.75.

The instant appeal is a consolidation of appeals taken from the substantive judgment and the award of attorney fees.

The company charges fifteen assignments of error on this appeal which may be fairly consolidated into four assignments of error: (1) The district court erred in concluding that no valid bargaining agreement existed between Local 307 and G & M's Cambridge plant; (2) any contract was void against G & M as a "prehire" agreement; (3) if enforced, Local 307 could not maintain this action because it failed to exhaust the contract's grievance procedures; and, (4) it was error to award fees beyond the amount of the contingent fee arrangement between the plaintiff and its counsel, and by failing to reduce the hours submitted by counsel for time expended on Local 307's § 301 claim, which was not subject to a fee award.

The finding that an agreement existed between G & M and Local 307 is a factual determination and is thus subject to the "clearly erroneous" standard of review. Fed.R.Civ.P. 52(a). In *Sawyer v. Arum*, 690 F.2d 590 (6th Cir.1982), which was also a case involving a determination of the existence of a contract, made by a trial

judge sitting without a jury, this court defined the applicable scope of review:

> [T]he factual conclusions rendered by a district court sitting without a jury are binding on appeal unless this court is left with a definite and firm conviction that a mistake has been made. It is the appellant who must shoulder the burden of proving such a mistake, and this burden is not met merely by demonstrating a conflict in the testimony, nor by seeking to redetermine the credibility of witnesses. Moreover, the appellate court must review the facts in the light most favorable to the present appellee.

690 F.2d at 591–92 [citations omitted].

■ Viewed in the light most favorable to Local 307, there is ample evidence in the record, particularly Arnett's credited testimony, to support the finding of fact that G & M agreed to be bound by Local 307's master agreement, as of July 1975, when conducting business in the Cambridge area. *See Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584, 588 (6th Cir.1976) ("the question whether the parties intended a contract is a factual one, not a legal one, and, except in the clearest cases, the question is for the finder of fact to resolve"). Accordingly, the finding that G & M was contractually obliged to observe the master agreement is affirmed.

G & M next asserts that even if a contract existed, the contract is not enforceable because it was a "prehire" agreement; that is, a labor contract entered into prior to the hiring of any employees and thus, necessarily, prior to any proof that the union represented a majority of the company's employees. Relying upon the Supreme Court decision in *N.L.R.B. v. Local 103, International Assoc. of Bridge, Structural and Ornamental Ironworkers (Higdon Construction)*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978), appellant here maintains that while the company may have contracted with a union prior to proof of majority status, such a contract was not enforceable until the majority was ascertained by election.

■ Two points of analysis are relevant prior to considering G & M's construction of *Higdon*. First, even if prehire contracts cannot be enforced under the Labor Managements Relations Act, the lack of a valid union contract is never a defense to violations of the Fair Labor Standards Act. Simply put, the Labor Management Relations Act, 29 U.S.C. § 185, regulates conduct between an employer and a labor organization, while the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., is designed to give individual workers, regardless of whether they have a valid union contract, certain minimum wage and hour standards. *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). Second, whatever merit might have been previously ascribed to G & M's construction of *Higdon*, has been authoritatively refuted by the Supreme Court in *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983).

In *Higdon*, the Court had ruled that a minority union had no right, based solely on a prehire agreement, to picket an employer to force the employer to bargain with the union. 434 U.S. at 346, 98 S.Ct. at 658. The Court concluded that a prehire contract addressing wage rates was not equivalent to a representation election in conferring all the legal rights that flow to a certified union, including the right to picket. The Court rested this conclusion on two points: (1) a desire to protect the right of employees to freely select their own bargaining representatives, and (2) Congress' intention that prehire agreements be voluntary and voidable if the bargaining election did not provide majority status.

*Jim McNeff* squarely addressed the circumstances presented in this case and concluded that an action by the union to enforce monetary obligations incurred by a prehire agreement neither impaired the right to vote for a bargaining unit nor did it conflict with the "voluntary and voidable" characteristics of these agreements where the facts established that the company freely entered into the agreement and never affirmatively repudiated it to the un-

ion. Writing for a unanimous Court, the Chief Justice stated:

The concerns with the § 7 rights of employees to select their own bargaining representative and our fidelity to Congress' intent that prehire agreements be voluntary—and—voidable that led to our decision in *Higdon* are not present in this case. Union enforcement, by way of a § 301 suit, of monetary obligations incurred by an employer under a prehire contract prior to its repudiation does not impair the right of employees to select their own bargaining agent. Unlike the situation in *Higdon,* enforcement of accrued obligations in a § 301 suit does not mean that the union represents a majority of the employer's employees. In a § 301 suit, the District Court merely enforces a contract entered into by the employer—a contract that Congress has legitimated to meet a special situation even though employees themselves have no part in its negotiation or execution. Such enforcement does not grant the plaintiff union a right enjoyed only by a majority union except in the very narrow sense, expressly intended by Congress, that employers and minority unions in the construction industry do not violate the Act by entering into prehire agreements. There is no sense in which respondents' contract action has a recognitional purpose like that forbidden in *Higdon.*

Neither does respondents' § 301 action trench on the voluntary and voidable characteristics of a § 8(f) prehire agreement. It is clear in this case that petitioner entered into the prehire agreement voluntarily. Moreover, although the voidable nature of prehire agreements clearly gave petitioner the right to repudiate the contract, it is equally clear that petitioner never manifested an intention to void or repudiate the contract. For the relevant period of time, the record shows conclusively that petitioner accepted the benefits of the prehire agreement and misled the union of its true intention never to fulfill its contractual obligations. Whatever may be required of a party wishing to exercise its undoubted right to repudiate a prehire agreement before the union attains majority support in the relevant unit, no appropriate action was taken by petitioner to do so in this case. Consequently, respondents' suit does not enervate the voluntary and voidable characteristics of the prehire agreement.

\* \* \* \* \* \*

A § 8(f) prehire agreement is subject to repudiation until the union establishes majority status. However, the monetary obligations assumed by an employer under a prehire contract may be recovered in a § 301 action brought by a union prior to the repudiation of the contract, even though the union has not attained majority support in the relevant suit.

461 U.S. at ——, 103 S.Ct. at 1758–59 (footnotes omitted).

■ *Jim McNeff* thereby compels the conclusion that the trial judge correctly ruled that Local 307 could enforce its prehire agreement with G & M in the federal forum by means of a § 301 suit.

■ The third major appellate issue is G & M's contention that, prior to the § 301 suit by the union, the grievance procedure established by the contract should have been exhausted. G & M asserts that this claim presents a significant difficulty for the union with respect to the preceding issue, *to wit:* in order to sue for enforcement of the prehire contract, the union must have asserted that G & M had not exercised its right to repudiate the contract; yet, in order to excuse its failure to seek arbitration, the union was obliged to argue that the contract's grievance remedies were not available because G & M had repudiated the contract.

Local 307 relies upon the case authorities which hold that federal policy requiring exhaustion of contractual remedies does not apply when the company, by its actions, repudiates the contract and its grievance machinery. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966); *Geddes v. Chrysler Corp.,* 608 F.2d 261 (6th Cir.

1979). However, Local 307 also cites the line of case authority which excuses failure to pursue administrative remedies in cases less severe than repudiation but reaching circumstances where the grievance would be "futile." *Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

The short answer to the "dilemma" postulated by G & M is that resort to the Local 307 bargaining agreement's arbitration process is futile because G & M has, as its primary position herein, argued that the Local 307 contract was wholly inapplicable. This position differs from a "repudiation" in that G & M has never agreed that it was a signatory to the contract and thus was never in a position to "repudiate" a prior concurrence in the contract; rather G & M has not acknowledged that the Local 307 contract is in any way relevant to its operations in Cambridge. Inasmuch as the contractual grievance board required two representatives from the company to participate in resolving a grievance, and inasmuch as G & M argued that it had never obligated itself to observe that contract, it would be plainly futile to insist that Local 307 resort to joint arbitration. Moreover, it may be noted that in the very similar case of *Jim McNeff, supra,* where McNeff never disputed the existence of the contract, no exhaustion was required to reach the enforceability of the contract. *See generally,* 667 F.2d 800 (9th Cir.1982).

Finally, G & M urges that the award of attorney fees should be limited by the contingent fee contract between plaintiff and its counsel and that the award was improperly derived as a result of the trial court's failure to distinguish between hours expended on the L.M.R.A. cause of action, which is not directly subject to the fee recovery statute, and the time expended on the wage claim, for which recovery of a reasonable fee is provided.

The district court award of fees followed the statutory direction in § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), that "[t]he court ... shall, in addition to any judgment awarded to a plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant". Neither the Act nor its legislative history sheds light on the meaning of "reasonable" in § 216(b), nor does either discuss the impact of a contingent fee agreement on a district court's § 216(b) evaluation.

 It is long established that an award of attorney fees under § 216(b) is mandatory but the amount awarded is within the discretion of the district court. *Montgomery Ward & Co. v. Antis,* 158 F.2d 948, 952 (6th Cir.), *cert. denied,* 331 U.S. 811, 67 S.Ct. 1202, 91 L.Ed. 1831 (1947). Thus, the appellate issue is whether the lower court abused that discretion by awarding an unreasonable fee. *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228–29 (7th Cir.1972). *See also Conklin v. Joseph C. Hofgesang Sand Co., Inc.,* 565 F.2d 405, 407 (6th Cir.1977); *Luther v. Z. Wilson, Inc.,* 528 F.Supp. 1166, 1176 (S.D. Ohio, 1981). The determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees. *See generally Louisville Black Police Officers Org. Inc. v. Louisville,* 700 F.2d 268 (6th Cir.1983); *Northcross v. Board of Ed.,* 611 F.2d 624 (6th Cir.1979) *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

The design of the Fair Labor Standards Act is intended to rectify and eliminate "labor conditions detrimental to the maintenance of the minimum standard living" for workers. 29 U.S.C. § 202(a).[1] The availa-

---

1. The complete text of § 202 discloses the breadth of the imperative espoused by Congress in enacting the F.L.S.A.:

 (a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor

conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor con-

bility and award of attorney fees under § 216(b) must reflect the obvious congressional intent that the policies enunciated in § 202 be vindicated, at least in part, through private lawsuits charging a violation of the substantive provisions of the wage act. Moreover, the purpose of § 216(b) is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances; "[o]bviously Congress intended that the wronged employee should receive his full wages ... without incurring any expense for legal fees or costs". *Maddrix v. Dize,* 153 F.2d 274, 275–76 (4th Cir.1946).

Insofar as Local 307 has satisfied the threshold qualification for recovery of fees under § 216(b) by prevailing on its F.L.S.A. complaint, it remains for this court to evaluate the reasonableness of the district court's award in view of the charge that the contingent fee arrangement established a ceiling on that award. Fortunately, we are guided by the recent Supreme Court decision in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), at least so far as our "reasonableness" review is concerned.

In *Hensley v. Eckerhart,* the Court reviewed an award of attorney fees authorized by the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which provides that in federal civil rights litigation, the trial court, "in its discretion, may allow the prevailing party, other than

the United States, a reasonable attorney's fee as part of the costs". Although the award in that case followed from recent civil rights legislation which was preceded by specific congressional commentaries intended to delineate the factors of the fee evaluation, the Court noted nonetheless that "[t]he standards set forth in this opinion are generally applicable in *all* cases in which Congress has authorized an award of fees to a 'prevailing party' ". *Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1939 n. 7 [emphasis added]. Therefore, this court perceives no difficulty in the direct application of the *Hensley v. Eckerhart* formulation to the recovery of attorney fees under § 216 of the Fair Labor Standards Act, 29 U.S.C. § 216.

Under *Hensley,* the district court's initial task is to identify a reasonable hourly rate and determine the hours reasonably expended on the litigation. The product of these figures produces a reasonably objective "initial estimate of the value of a lawyer's services". 461 U.S. at ——, 103 S.Ct. at 1939. In obtaining the number of hours expended on the case, the district court must conclude that the party seeking the award has sufficiently documented its claim. Where the documentation is inadequate, or recently compiled retrospective estimations of time expended, the district court would do violence to its judicial obligations were it to accept the amounts claimed at their value. *See id.*[2]

ditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce.

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

**2.** The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation. Particularly apt is the commentary by Chief Judge Lumbard of the Second Circuit, in modifying the district court's award of fees in *In re Hudson & Manhattan R.R. Co.,* 339 F.2d 114, 115 (2d Cir.1964):

[A]ny attorney who hopes to obtain an allowance from the court should keep accurate and current records, or work done and time spent. Lawyers are well aware that ... they are valued principally on the basis of time required. There is *no* excuse for an established law firm to rely on estimates made on the eve of payment and almost entirely unsupported

Once the initial valuation is derived, the trial judge must then measure that amount against several factors, not the least of which would be the results obtained by the litigant. *Hensley v. Eckerhart,* — U.S. at —, 103 S.Ct. at 1940.[3] In considering the result of litigation *vis-a-vis* a claim for fees, it is essential that, in cases such as the one at bar where Congress has authorized the recovery of fees, the court be cognizant that the result achieved is necessarily more than mere financial gain. The recovery of attorney fees is a tool utilized by Congress to encourage the vindication of congressionally identified policies and rights, as well as to enable the plaintiff to obtain damages without expense for legal assistance. Too great an emphasis on the amount realized from the judgment would detrimentally encourage attorneys to concentrate on increasing the damage award, perhaps with harm to the merits of the case; moreover, transfixion on the damage amount in establishing fees would penalize those litigants whose cases carry slight pecuniary damages, but which present instances of significant statutory violations. *See Cooper v. Singer,* 719 F.2d 1496, 1502 (10th Cir.1983) (*en banc*) ("The lawyer can go forward with nonmonetary claims, secure in the knowledge that the fee award will not be diminished on account of the absence of damages") (§ 1983 case); *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228 (7th Cir.1972) ("The amount of damages recovered is only one factor to be considered in arriving at a reasonable fee award") (F.L.S.A. case).

Despite *Hensley,* an issue remains as to the importance of a contingent fee contract in the trial court's evaluation of a reasonable fee. Specifically, this court must resolve the propriety of limiting the award of fees to the amount contracted for by the attorney. Immediately it is apparent that adoption of this view would run counter to this court's concern that § 216(b) represents a congressional attempt to support the policies of the F.L.S.A. through the intervention of private parties. By limiting an attorney to a percentage of the pecuniary return on a wage claim, the court would thus deny complete expression of the vital issues which underlie the wage statutes. Therefore, the court commences the analysis predisposed against utilization of the contingency arrangement as an outside limit to an award of counsel fees.

This issue is not new to F.L.S.A. litigation. In *Skidmore v. John J. Casale, Inc.,* 160 F.2d 527, 531 (2d Cir.), *cert. denied* 331 U.S. 812, 67 S.Ct. 1205, 91 L.Ed. 1832 (1947), a panel including Judges Learned and Augustus Hand speculated that contingent fee contracts in F.L.S.A. litigation were improper: "We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net, and that therefore the lawyer's compensation should come solely from the employer." *See generally Aucoin v. Mystic Waste Co.,* 55 F.Supp. 672 (D.Mass.1944); *Hutchinson v. Wm. C. Barry,* 50 F.Supp. 292 (D.Mass.1943).

The court in *Harrington v. Empire Const. Co.,* 167 F.2d 389 (4th Cir.1948), did not equivocate. That court held contingent fee agreements were irrelevant to the district court's evaluation of the fee petition. Similarly, the Fifth Circuit in *Hayden v. Bowen,* 404 F.2d 682, 686 (5th Cir.1968), *cert. denied,* 395 U.S. 933, 89 S.Ct. 1995, 23 L.Ed.2d 448 (1969), held that an *employer* was without standing to challenge a district court fee award on the basis of the contingent fee arrangement between the

by daily records or for it to expect a court to do so.

**3.** The district court may also consider other factors. *See, e.g., Louisville Black Police Officers Org. v. Louisville, supra; Northcross v. Bd. of Ed., supra; Copeland v. Marshall,* 641 F.2d 880, 890 (D.C.Cir.1980) (*en banc*); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). However, the court below "should note that many of these factors usually are subsumed with the initial calculation of hours reasonably expended at a reasonable hourly rate". *Hensley v. Eckerhart,* 461 U.S. at —, 103 S.Ct. at 1940 n. 9. *See also Cooper v. Singer,* 719 F.2d at 1502 n. 10.

employee-plaintiff and counsel. *See also Houser v. Matson*, 447 F.2d 860 (9th Cir. 1971). In all of those cases, however, the fees awarded by the trial court were *less* than the contingent contract amount. Nevertheless, a consistent principle binds these cases and remains applicable to the situation presented by the case at bar; that is, the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel.

▪▪▪ Moreover, the act imposes on the errant employer the burden of financing plaintiff's case to the extent of court costs and a judicially determined reasonable rate of pay for plaintiff's counsel. The fact that the plaintiff has entered into an agreement with the lawyers prosecuting the case does not impact on the statutory burden of the employer, as the latter must pay what the district court determines to be a reasonable rate. The existence of a contingency contract may be considered by a district court as an element to be considered in determining the market value of an attorney's services, but the court is not bound in any sense by that agreement. Nothing in *Hensley v. Eckerhart* suggests that its formula is inapplicable to awards of fees where contingent contracts exist. Moreover, by proper consideration of the contingent contract pursuant to the market standard calculus endorsed in *Hensley v. Eckerhart,* excessive awards of fees will be avoided. *Cooper v. Singer,* 719 F.2d 1496, 1502–03 (10th Cir.1983) (*en banc*) ("Prevailing parties receive an attorney's fee award calculated at the market billing rate for hours reasonably spent in advancing the successful claims, including an allowance for the contingent risks assumed by an attorney"). *Accord generally Wojtkowski v. Cade,* 725 F.2d 127 (4th Cir. 1984) (civil rights action); *Lenard v. Argento,* 699 F.2d 874, 899 (7th Cir.1983) (§ 1983 action); *Sanchez v. Schwartz,* 688 F.2d 503, 505 (7th Cir.1982) (§ 1983 action); *Fleet Investment Co., Inc. v. Rogers,* 620 F.2d 792, 793–94 (10th Cir.1980) (odometer rollback case) ("The value of an attorney's services is not only measured by the amount of recovery to plaintiff, but also the non-monetary benefit accruing ... from his successful vindication of a national policy"); *Duval v. Midwest Auto City, Inc.,* 578 F.2d 721, 726 (8th Cir.1978) (odometer rollback case); *Glick v. Montana,* 162 Mont. 82, 509 P.2d 1, *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106 (1973) (F.L.S.A.). The court therefore concludes that a § 216(b) fee award should not be limited by a contingent fee agreement and that the standards established in *Hensley* apply regardless of fee arrangements.

▪▪ The final component of the appellant's assignment of error relative to the award of attorney fees deals with the failure of the lower court to segregate those hours attributed to the § 207 suit from time utilized in preparing the § 301 cause of action. The Local and the individual employees agree that the trial judge made no findings distinguishing compensable from non-compensable time, but claim (1) that only compensable hours were presented to, and considered by, the trial judge; and (2) the hours expended on each claim were identical inasmuch as the facts utilized for one suit were employed in the companion action.

The appellees' position is untenable. The transcript of the attorney fee hearing simply does not establish either that only time expended on the § 207 suit was presented to the court or, if all time was presented, that any evidence was adduced to prove how matters involving the § 301 action were necessarily intertwined with the § 207 case. Granting that *Hensley* affords a district court discretion to determine a fee award, it "remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award" 461 U.S. at ——, 103 S.Ct. at 1941. *See also Louisville Black Police Officers Org. Inc. v. Louisville,* 700 F.2d 268 (6th Cir.1983). Because the district court did not do this, and because there is no basis in the record to affirm the number of hours upon which the award is based as excluding, as a matter of fact, any time

expended on the elements of this case unrelated to the § 207 complaint or not necessarily intertwined therewith, the matter is hereby remanded for reconsideration of the award of attorney fees in a manner consistent with this opinion. The remainder of the district court judgment is affirmed.