RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NATIONAL LABOR RELATIONS BOARD,
                              *Petitioner*,

        *v.*

BANNUM, INC; BANNUM PLACE OF SAGINAW, LLC,
                              *Respondents*.

Nos. 21-2664/2690

On Motion for Attorney Fees.
Nos. 07-CA-207685; 07-CA-211090; 07-CA-215356.

Decided and Filed:  May 17, 2024

Before:  MOORE, COLE, and NALBANDIAN, Circuit Judges.

───────────────

**COUNSEL**

**ON MOTION AND REPLY:**  Shawnnell T. Barnett, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for NLRB.  **ON RESPONSE:**  Frank T. Mamat, DINSMORE & SHOHL, LLP, Troy, Michigan for Bannum.

        The court delivered a PER CURIAM order.  NALBANDIAN, J. (pp. 10–11), delivered a separate opinion dissenting in part.

───────────────

**ORDER**

───────────────

        PER CURIAM.  On February 23, 2024, we held Bannum, Inc. and Bannum Place of Saginaw, LLC (collectively "Bannum") in civil contempt and ordered Bannum to pay to the National Labor Relations Board ("NLRB") reasonable attorney fees.  The NLRB now seeks

$14,872.80 in attorney fees.  For the following reasons, we **GRANT** in full the NLRB's request, and we order Bannum to pay the NLRB attorney fees in the amount of $14,872.80.

**I.**

After unlawfully terminating two employees in violation of the National Labor Relations Act, Bannum was ordered to pay $112,476.53, plus interest and tax offsets, to make the two employees whole.[1]  *See NLRB v. Bannum, Inc.*, 93 F.4th 973, 977 (6th Cir. 2024) (per curiam) (discussing the procedural history).  Following Bannum's failure to satisfy its backpay obligations, we issued a protective restraining order in July 2023 prohibiting Bannum from disposing of its assets and aiming to ensure Bannum's ability to satisfy its liabilities.  *NLRB v. Bannum, Inc.*, 2023 WL 4842837 (6th Cir. July 27, 2023).  On February 23, 2024, we held Bannum in civil contempt for failing to comply with that protective restraining order.[2]  *Bannum*, 93 F.4th at 984.  "Given Bannum's repeated contumacious conduct," we ordered Bannum, as relevant here, "to pay to the NLRB all costs, expenses and reasonable attorney fees, calculated at the prevailing market rate in Washington, D.C., incurred by the NLRB in the investigation, preparation, presentation, and final disposition of [the contempt] motion."  *Id.* at 982, 984.  We further ordered that "[a]ll of said costs . . . shall be fixed by further order of this court upon submission by the NLRB of a certified statement of such costs and expenses."  *Id.* at 984.  On March 8, 2024, the NLRB filed a statement of attorney fees with attached declarations by Pia Winston and Shawnnell T. Barnett, the two attorneys who worked on the contempt motion.  D. 69 (Pet'r V.S.) (6th Cir. Mar. 8, 2024).

On March 21, 2024, thirteen days after the NLRB filed its motion and statement of attorney fees, Bannum filed objections to the attorney fees.  D. 70 (Resp't Opp'n Mot.) (6th Cir. Mar. 21, 2024).  Pursuant to Rule 27 of the Federal Rules of Appellate Procedure, a party "fil[ing] a response to a motion . . . must [file] within 10 days after service of the motion unless the court shortens or extends the time."  Fed. R. App. P. 27(a)(3)(A).  Because the NLRB's

---

[1]The factual background of this case can be found in *Bannum Place of Saginaw, LLC v. NLRB*, 41 F.4th 518, 522–23 (6th Cir. 2022).

[2]In that order, we also denied without prejudice the NLRB's motion for spoliation sanctions.  *Bannum*, 93 F.4th at 976.

motion and statement of attorney fees was filed and served on March 8, 2024, Bannum's response was due by March 18, 2024. Bannum's March 21, 2024 filing is, accordingly, untimely. Despite this three-day late filing, Bannum fails to justify its tardiness or move to extend its time to file. We are disturbed by Bannum's repeated disregard of this court's orders and procedure and caution Bannum that further defiance will not be tolerated.**[3]** That said, we consider Bannum's arguments below.

## II.

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). The party seeking attorney fees bears the initial burden to substantiate "the hours worked and the rates sought." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). To substantiate the hours and receive an award of attorney fees, "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). If "the documentation is inadequate," we "may reduce the award accordingly." *Imwalle*, 515 F.3d at 553. Adequate documentation need not "record in great detail how each minute of [an attorney's] time was expended," but "the general subject matter of his time expenditures" should be identified. *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983); *see also Imwalle*, 515 F.3d at 553.

Bannum does not dispute that the NLRB is entitled to recover attorney fees. *See* D. 70 (Resp't Opp'n Mot.) (6th Cir. Mar. 21, 2024). Bannum, moreover, does not dispute the hourly rate that the NLRB claims for each attorney that worked on the contempt motion. *See id.* Rather, it disputes only the number of hours that the NLRB is claiming. *See id.* at 2. Bannum argues that we "should reduce the Board's award of attorney fees" because (1) the NLRB

---

**[3]**We direct Bannum to the deadlines set in our February 23, 2024 order. *See Bannum*, 93 F.4th at 984. Failure to meet these deadlines may warrant sanctions.

attorneys' "declarations are lacking in the detail required to determine whether the amount of time they expended was reasonably-suited to the tasks," and (2) the NLRB is improperly seeking fees for "time its counsel spent on clerical tasks." *Id.* at 2, 3, 8.  Bannum points to specific hours for which it claims fees should be reduced.  Its arguments are unavailing.

## A.  Attorney Winston's 2.6 Hours

Bannum objects to the 2.6 hours that Attorney Pia Winston billed.  Winston billed one hour to review "Bannum's response to the PRO" and 1.6 hours to "[p]repare and email correspondence to Bannum counsel."  D. 69-2 (Winston Decl. at 2) (6th Cir. Mar. 8, 2024).  Bannum objects to both bills on the ground that the entries fail to provide enough detail for the court to determine if it was reasonable to spend 2.6 hours reviewing "three pages of correspondence and draft[ing] a short letter in response."  D. 70 (Resp't Opp'n Mot. at 4) (6th Cir. Mar. 21, 2024).  Bannum also specifically objects to the bill for "[p]repar[ing] and email[ing] correspondence to Bannum counsel" on the ground that this is a "block-billed entry [that] does not distinguish between the amount of time it took to 'prepare' the correspondence versus the amount of time it took to 'email' it to Bannum's counsel."  *Id.* at 3–4.

Bannum is correct that billing entries "must be of sufficient detail and probative value to enable [us] to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *United Slate*, 732 F.2d at 502 n.2.  That said, "explicitly detailed descriptions are not required."  *Imwalle*, 515 F.3d at 554.  In determining whether a statement is sufficiently detailed, as well as whether hours are reasonable, we consider "the context of the billing statement as a whole and in conjunction with the timeline of the litigation."  *Id.*  Hours billed may be reasonable given the context of the billing statement and the litigation, even if "some of the time entries in counsel's billing statement provide only the briefest description of the task completed."  *Id.*  Here, Winston spent an hour reviewing Bannum's response to the PRO on August 25, 2023.  D. 69-2 (Winston Decl. at 2) (6th Cir. Mar. 8, 2024).  August 25, 2023 was "the extended deadline by which Bannum was obliged to provide the Board with its lists of assets and asset sales."  *Bannum*, 93 F.4th at 978.  On that day, Bannum provided the NLRB with a "preliminary response" that included some information required by the PRO and failed to include other required information.  *Id.*  With that "timeline of

the litigation" in mind, *Imwalle*, 515 F.3d at 554, counsel very likely "actually and reasonably" spent an hour reviewing that document, *United Slate*, 732 F.2d at 502 n.2. The timeline of the litigation likewise bolsters the conclusion that counsel actually and reasonably spent 1.6 hours preparing and emailing correspondence to Bannum counsel on September 8, 2023. *See* D. 64 (Pet'r Contempt Br. at 9–12) (6th Cir. Jan. 22, 2024) (discussing the communication between counsel during this period).

Bannum's block-billing objection is similarly unavailing. Block-billing involves "group[ing] together multiple tasks without specifying how much time each task took." *Miller v. Caudill*, 936 F.3d 442, 452 (6th Cir. 2019). The objected-to entry reads: "Prepare and email correspondence to Bannum counsel." D. 69-3 (Winston Decl. at 2) (6th Cir. Mar. 8, 2024). Bannum argues that this entry fails to "distinguish between the amount of time it took to 'prepare' the correspondence versus the amount of time it took to 'email' it to Bannum's counsel." D. 70 (Resp't Opp'n Mot. at 4) (6th Cir. Mar. 21, 2024). Common sense dictates that preparing and then emailing correspondence—i.e., drafting the message and then clicking send—is a single task. Even if this billing entry did identify two tasks, however, "[b]lock billing is not *per se* improper; it 'can be sufficient' if the description of the work performed is adequate." *Miller v. Davis*, 267 F. Supp. 3d 961, 997 (E.D. Ky. 2017) (quoting *Husted*, 831 F.3d at 705 n.7), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019). This entry adequately describes the work being done. Bannum must, accordingly, pay attorney fees for Winston's 2.6 hours.

**B. Twelve Hours to Prepare and Edit the Contempt Motion**

Bannum next objects to Attorney Shawnnell T. Barnett's eight hours to prepare and four hours to edit the contempt motion. D. 70 (Resp't Opp'n Mot. at 5–6) (6th Cir. Mar. 21, 2024). Bannum argues that the billing entries that read "Prepare Motion to Adjudicate Respondents in Civil Contempt of Protective Restraining Order and for Spoliation Sanctions" and "Edit Motion to Adjudicate Respondents in Civil Contempt of Protective Restraining Order and for Spoliation Sanctions" lack sufficient detail for the court to determine if the twelve hours expended was reasonable. *Id.* Bannum objects that "the verb 'edit,'" for example, is insufficient to detail "what [Barnett] did or why the editing process was so extensive." *Id.* at 6. In addition to lacking sufficient detail, Bannum also argues that it simply was not reasonable for counsel to spend

twelve hours writing and editing this motion. *Id.* at 5–6. Bannum specifically points out that "almost two full pages [of the motion are] devoted to a block quotation," and the motion "pieces together the case's oft-repeated factual history with straightforward legal arguments built on settled legal precedent." *Id.* at 6.

Bannum's arguments fall short. As noted above, "explicitly detailed descriptions" in billing statements "are not required." *Imwalle*, 515 F.3d at 554. Counsel must instead provide "the general subject matter" of the task, *id.* at 553 (quoting *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1020 (N. D. Ohio 1997)), such that we can "determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation," *United Slate*, 732 F.2d at 502 n.2. Descriptions such as "preparing" and "editing" the contempt motion may be "brief," but they provide the "general subject matter"—i.e., the motion at issue—as well as what the attorney was doing. *Imwalle*, 515 F.3d at 553–54. This provides sufficient detail for our analysis. *See id.*

One attorney spending twelve hours writing and editing a nearly 30-page contempt motion was reasonable in this case. Contrary to Bannum's arguments, the contempt motion was the first opportunity for the NLRB to raise several legal issues. Although the parties had submitted several prior briefs, this was the first time the issue of contempt was raised. Though "[t]here is no precise rule or formula" to determine how many hours counsel may reasonably spend on a task, twelve hours to write and edit a nearly 30-page motion with legal arguments not previously raised in the litigation appears reasonable. *Hensley*, 461 U.S. at 436. We have, moreover, previously held far greater hours spent drafting and editing filings to be reasonable. *See, e.g.*, *Husted*, 831 F.3d at 707–08 (discussing and permitting recovery of attorney fees for hundreds of hours billed for drafting and editing both major and minor filings). Bannum must, accordingly, pay attorney fees for these hours.

**C. Two Hours to Confer with NLRB Management**

Bannum also objects to the two hours Barnett billed for conferring with NLRB management. Barnett conferred with NLRB management on two occasions—January 10, 2024 and February 5, 2024—and assessed fees for conferring with management for a total of two

hours.  D. 69-3 (Barnett Decl. at 3) (6th Cir. Mar. 8, 2024).  Bannum argues that this billing entry is vague because it "is silent about, for example, the topics Ms. Barnett and 'CCSLB management' covered, why the conference was necessary, and other descriptors that might enable the Court to determine whether it is reasonable for [Bannum] to bear this expense."  D. 70 (Resp't Opp'n Mot. at 7) (6th Cir. Mar. 21, 2024).

Bannum's arguments (1) that the billing entries are too vague, and (2) that these conferences were not reasonable, both fail.  Billing entries for time spent conferring with other lawyers need not include the details of what the lawyers discussed.  *See, e.g.*, *Husted*, 831 F.3d at 706.  A contrary rule, such as Bannum suggests, could implicate privileges for attorney work product and attorney-client communication.  We reject such a rule.

Hours spent conferring with other lawyers or supervisors "cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed."  *Id.* (quoting *Coulter v. Tennessee*, 805 F.2d 146, 150 (6th Cir. 1986)).  "There is no hard-and-fast rule as to . . . how many hours lawyers can spend discussing a project."  *Id.* (quoting *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007)).  That said, two hours spent over the course of multiple months of litigation is eminently reasonable.  *See, e.g.*, *id.* (holding that "650+ conferencing hours" was not unreasonable and that "Defendants' conclusory 'too many hours' allegations do not establish error"); *Gautreaux*, 491 F.3d at 661 (holding that the district court "did not abuse its discretion in concluding that [489 hours] spent on intra-team communications [over the course of two years] was compensable").  These two billing entries, moreover, "when read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation," are clearly related to the subject of the contempt motion.  *Imwalle*, 515 F.3d at 554.  January 10, 2024 sits in between "the final correspondence [between the NLRB and Bannum] prior to the initiation of the [contempt] motion," and the filing of the contempt motion.  *Bannum*, 93 F.4th at 979.  February 5, 2024 is two days before the NLRB filed its reply brief in support of the contempt motion.  *See* D. 67 (Pet'r Contempt Reply Br.) (6th Cir. Feb. 7, 2024).  These hours are, accordingly, reasonable.

**D.  0.6 Hours to Prepare Exhibits and File Contempt Motion and Reply Brief**

Bannum additionally objects to the 0.2 hours Barnett billed for preparing exhibits and the 0.4 total hours Barnett billed for filing the contempt motion and the reply in support of the contempt motion.  D. 70 (Resp't Opp'n Mot. at 8) (6th Cir. Mar. 21, 2024).  Bannum argues that preparing exhibits and filing motions are clerical tasks for which an attorney fee award is inappropriate.  *Id.*

"[P]urely clerical or secretarial tasks should not be billed" at the same rate as pure legal work.  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  Though this court has never explicitly defined clerical work, we have previously described it as "non-professional work" and "ministerial" in nature.  *In re Hayes & Son Body Shop, Inc.*, 958 F.2d 371, 1992 WL 56754, at *3 (6th Cir. 1992) (per curiam) (unpublished).  In *B & G Mining, Inc. v. Director, Office of Workers' Compensation Programs*, an administrative law judge reduced a bill for "receiving, reviewing and filing correspondence" on the basis that some of that work was "primarily clerical in nature."  522 F.3d 657, 666 (6th Cir. 2008).  We affirmed the hours awarded, holding that although "reviewing correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work."  *Id.*  Our sibling circuits have likewise defined clerical work by example, holding that clerical work includes delivering, picking up, and photocopying documents, *In re Meese*, 907 F.2d 1192, 1203 (D.C. Cir. 1990) (per curiam), filing and organizing documents as well as obtaining transcripts, *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (per curiam), "sending and receiving faxes, requesting and receiving medical records, serving papers, and hand-delivering courtesy copies of filings to the courthouse," *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019), and "faxing, emailing, filing, scanning, assembling, and conforming," *McKenna v. City of Philadelphia*, 582 F.3d 447, 457 (3d Cir. 2009).  Pure clerical work, as these examples indicate, does not require legal knowledge.

The 0.6 hours the NLRB billed for filing motions and preparing exhibits are not purely clerical.  As the NLRB explained, preparing exhibits "entailed a meticulous selection and organization process, grounded in a deep understanding of the legal framework and the strategic imperatives of the case," and required a "nuanced comprehension of legal principles and evidentiary requirements."  D. 71 (Resp't Reply Br. at 13) (6th Cir. Mar. 28, 2024).  Likewise,

filing motions in our online filing system requires the legal knowledge to appropriately categorize legal documents. *See id.* Filing a motion through our online filing system is not akin to "hand-delivering courtesy copies of filings to the courthouse," *Lilly*, 934 F.3d at 234, or filing correspondence in a filing cabinet,[4] *B & G Mining*, 522 F.3d at 666. Unlike merely delivering a document or organizing it alphabetically, the NLRB attorney utilized legal principles and knowledge to file these motions through our online system.

Recognizing this, the Sixth Circuit's Guide to Electronic Filing permits only attorneys "in good standing" who are "admitted to practice in this court," to register as a user of the Electronic Court Filing (ECF) system. *See* 6 Cir. Guide to Electronic Filing, § 2.2.[5] Though an attorney may authorize the use of their "login name and password by another," i.e., delegate the task of electronic filing, any such authorized use "is deemed to be the act of the attorney." *Id.* § 2.3. Furthermore, the fact that the court provides training to enable attorneys to properly file electronically, *see id.* § 14, suggests that electronic filing is not a purely clerical function. Because electronic filing requires legal knowledge, and because the court permits only attorneys to serve as registered users of the ECF system and attorneys are liable for any electronic filings done using their login credentials, electronic filing through the ECF system cannot be considered purely clerical.[6] The NLRB is thus entitled to these attorney fees.

**III.**

For the foregoing reasons, we **GRANT** in full the NLRB's request, and we order Bannum to pay the NLRB attorney fees in the amount of $14,872.80 within fourteen (14) days of this Order.

---

[4]Though there are several cases that identify "filing" as clerical work, *see, e.g.*, *B & G Mining*, 522 F.3d at 666; *McKenna*, 582 F.3d at 457, we distinguish between organizing and filing documents within an office (clerical) and filing motions with our court through the online filing system (not necessarily clerical).

[5]The Sixth Circuit Guide to Electronic Filing "govern[s] the electronic filing of documents in cases filed" in the Sixth Circuit. 6th Cir. Admin. Order 08-01 (May 7, 2008).

[6]*See, e.g.*, *Goza v. Memphis Light, Gas & Water Div.*, No. 2:17-CV-2873-JPM-DKV, 2019 WL 5855705, at *4 (W.D. Tenn. Oct. 8, 2019), *report and recommendation adopted*, No. 2:17-CV-2873-JPM-DKV, 2019 WL 5847849 (W.D. Tenn. Nov. 7, 2019); *Barrett v. Comm'r of Soc. Sec. Admin.*, No. CA 1:14-2398-SVH, 2015 WL 2199879, at *2 (D.S.C. May 11, 2015); *Peavler v. L. Firm of Krisor & Assocs.*, 49 F. Supp. 3d 535, 541 (S.D. Ind. 2014); *Dempsey v. Colvin*, No. 1:09CV790-SRW, 2013 WL 3280319, at *2 (M.D. Ala. June 27, 2013); *Williams v. Z.D. Masonry, Corp.*, No. 07-C-6207, 2009 WL 383614, at *5 (N.D. Ill. Feb. 17, 2009).

———————

## DISSENT

———————

NALBANDIAN, Circuit Judge, dissenting in part.  I join the majority opinion in full except for its award of fees for the 0.4 hours that NLRB attorney Shawnnell Barnett spent filing the NLRB's contempt motion and reply brief.  The majority agrees that physically filing documents at a courthouse is a clerical task.  This position is consistent with caselaw from other circuits.  *See Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019); *Action on Smoking & Health v. Civ. Aeronautics Bd.*, 724 F.2d 211, 222 (D.C. Cir. 1984).  But the majority thinks electronic filing is somehow different.[1]

I disagree.  Filing is still a clerical task.  As the majority acknowledges, an attorney may authorize support staff to file documents electronically using that attorney's login.  The user may have to describe a filing as a certain type of motion, but that should be a straightforward ministerial task, not a nuanced exercise of legal judgment.  It does not take much legal knowledge to decide that a request for fees should be called a motion for attorney's fees.  And even if some courts (including this one) don't give non-attorneys electronic filing accounts, some do.[2]

Of course, a paralegal who files a motion electronically acts as an attorney's agent.  Attorneys are responsible for the acts of their agents here as in countless other situations.

---

[1]The majority cites cases that support its position.  *See* Maj. Op. at 9 n.6.  But other district courts have reached the opposite conclusion.  *See Parks v. Bre/Sanibel Inn Owner L.L.C.*, No. 220-cv-188, 2021 WL 71602, at *4 n.11 (M.D. Fla. Jan. 8, 2021); *Torcivia v. Suffolk County*, 437 F. Supp. 3d 239, 253 (E.D.N.Y. 2020); *Frederic v. Commonwealth Fin. Sys., Inc.*, No. 15-cv-3811, 2016 WL 1383488, at *4 (E.D.N.Y. Apr. 7, 2016); *Gardner v. Simpson Fin. Ltd. P'ship*, 963 F. Supp. 2d 89, 93 (D. Mass. 2013); *Baruch v. Healthcare Receivable Mgt., Inc.*, No. 05-cv-5392, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007); *King v. N. Bay Contractors, Inc.*, No. 05-cv-2080, 2006 WL 3335118, at *4 (E.D.N.Y. Oct. 25, 2006); *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 25 (D.D.C.) (magistrate judge opinion), *amended by* 388 F. Supp. 2d 1 (D.D.C. 2005); *see also Nat'l Audubon Soc'y, Inc. v. Sonopia Corp.*, No. 09-cv-975, 2010 WL 3911261, at *5 (S.D.N.Y. Sept. 1, 2010) (counting "review of ECF procedures" as "less-skilled work" requiring a fee deduction), *report and recommendation adopted*, 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010).

[2]*E.g.*, *Electronic Noticing & Filing Options Available to Pro Se Parties*, U.S. Court of Appeals for the Fifth Circuit, https://www.ca5.uscourts.gov/docs/default-source/default-document-library/pro-se-filer-instructions (last visited May 14, 2024).

For example, attorneys are responsible for their correspondence—even though the majority seems to acknowledge that sending emails and faxes and requesting medical records can be clerical tasks that an attorney should delegate. *See* Maj. Op. at 8. Most actions that take place in a law office are done on behalf of lawyers. But that does not mean lawyers can recover fees for every licked envelope or trip to the printer.

In sum, lawyers should not bill for the ten minutes it takes to file a pleading simply because they use computers. I respectfully dissent in part.

ENTERED BY ORDER OF THE COURT

_____

Kelly L. Stephens, Clerk