Michael McKENNA; Beth McKenna; Timothy McKenna; Patricia Sullivan, Appellants

v.

CITY OF PHILADELPHIA; Andrew Jericho; Mark Stoots; Captain Deborah Kelly; 2 John Doe Male Police Officers One White and One Black, Sued in official and individual capacity, Sued individually and jointly, Held liable individually and jointly; Jonathan Josie.

No. 08–4109.

United States Court of Appeals, Third Circuit.

Argued June 2, 2009.

Filed: Oct. 02, 2009.

452

Brian M. Puricelli, Newtown, PA, Brian K. Wiley, (argued), North Wales, PA, Attorneys for Plaintiffs–Appellants.

Shelley R. Smith, City Solicitor, Jane L. Istvan, (argued), Senior Attorney, Appeals, City of Philadelphia Law Department, Philadelphia, PA, Attorneys for Defendants–Appellees.

Before: McKEE, HARDIMAN, and GREENBERG, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. INTRODUCTION

This matter comes on before this Court on plaintiffs' appeal from orders entered in this action under 42 U.S.C. § 1983, denying their motion for a judgment as a matter of law or for a new trial and granting defendants partial summary judgment and a partial judgment as a matter of law. In addition, plaintiffs appeal from an order awarding them attorneys' fees, claiming that the award was inadequate.

This case arose from encounters between the Philadelphia police and revelers at an impromptu street celebration following the Philadelphia Eagles' National Football Conference championship win on January 23, 2005.[1] The four plaintiffs— Timothy McKenna; his parents, Michael and Beth McKenna (hereinafter "Mr. and Mrs. McKenna"); and his aunt, Patricia Sullivan—watched the game on television and then, bringing two video cameras, left home to join thousands of other Eagles fans celebrating in the streets of northeast Philadelphia in the vicinity of Cottman and Frankford Avenues. Eventually, the gathering started to get out of control, and plaintiffs crossed paths with police officers attempting to disperse the crowd so that injuries and property damage could be avoided.

At the trial, plaintiffs and the officers offered what in some respects were differing accounts of their encounter. They all agreed, however, that during the encounter the police, in particular Officer Andrew

---

1. The District Court set forth the background of the case in its post-trial opinion denying plaintiffs' motion for judgment as a matter of law or for a new trial. *McKenna v. City of Philadelphia*, Civ. No. 07–110, 2008 U.S. Dist. LEXIS 76766, 2008 WL 4450223 (E.D.Pa. Sept. 30, 2008).

Jericho, arrested 17–year–old Timothy McKenna. After they arrested Timothy, the police brought him to the 15th District Headquarters (the "15th District") for processing. His parents arrived at the 15th District sometime later. While arguing with Sergeant Mark Stoots regarding Timothy's status, Mr. McKenna was using his video camera to film activities in the 15th District's operations room, an area that was not open to the public for unrestricted access but which could be viewed through a window by occupants of the public area of the 15th District building. After Sergeant Stoots repeatedly asked Mr. McKenna to stop videotaping, Mr. McKenna gave the camera to his wife to take to the car, but she returned with the camera hidden under her jacket, still recording.[2] Ultimately, the police escorted Mr. and Mrs. McKenna from the building after which they were free to go to wherever they wished. The police, however, transported Timothy to a hospital for evaluation because he complained of injuries. Moreover, on their own initiative, Mr. and Mrs. McKenna and Ms. Sullivan also went to the hospital seeking evaluation and treatment. When the family returned to the 15th District, the police released Timothy to his parents. Though the police filed disorderly conduct charges against Timothy, a local court dismissed the complaint for lack of prosecution after the police did not appear for several scheduled proceedings.

On January 10, 2007, the four plaintiffs filed a complaint in the District Court alleging that the City of Philadelphia (hereinafter, the "City") and various police officers directly had committed or were responsible for multiple violations under section 1983 of their constitutional rights during the course of the foregoing events. The City successfully moved for summary judgment on plaintiffs' claims against it, but the case then proceeded to trial against defendants Captain Deborah Kelly, Officer Jericho, Sergeant Stoots, and Sergeant Jonathan Josey[3] on claims of Fourth Amendment malicious prosecution, false arrest, excessive force, and First Amendment retaliation. The First Amendment claim alleged that defendants improperly delayed Timothy's release in retaliation for Mr. McKenna's action in bringing a prior lawsuit against the City, and for the McKennas' refusal to stop videotaping the operations room at the 15th District where the police were holding Timothy.

At the trial the District Court granted Officer Jericho's motion for judgment as a matter of law on the malicious prosecution claim and granted judgment in favor of Sergeant Stoots and Sergeant Josey on supervisory liability claims. The Court also granted judgment as a matter of law in favor of Captain Kelly, finding that there was no evidence that she witnessed either the arrest or an improper delay in Timothy's release.

On September 14, 2007, following a five-day trial on the remaining claims, the jury found in favor of defendants on all charges except Timothy McKenna's false arrest claim against Officer Jericho. The jury awarded Timothy $150,000 in damages on that claim.

Subsequently, Timothy's attorney, Brian Puricelli, filed a fee petition pursuant to 42

---

**2.** Timothy's family recorded the events of the evening on two videotapes. In addition to the tape Mr. and Mrs. McKenna recorded, Ms. Sullivan recorded a tape that partially captured the events occurring at Cottman and Frankford Avenues. Ms. Sullivan's tape was played for the jury at trial. Sometime before trial, however, the tape Mr. and Mrs. McKenna recorded disappeared from their possession for reasons unknown to us.

**3.** Sergeant Josey's name is misspelled as "Josie" in the caption.

U.S.C. § 1988, seeking $181,340 for representation of Timothy. Moreover, he separately filed a bill of costs with the Clerk of the District Court seeking the taxation of costs, but only against Officer Jericho, the sole defendant who had been held liable in the case. In a post-trial motion, plaintiffs also raised multiple grounds for the grant of a judgment as a matter of law and, in the alternative, a new trial. On September 30, 2008, the District Court denied plaintiffs' post-trial motions and, in a separate opinion and order, awarded them $27,178.75 in attorneys' fees, explaining at length its reasons for awarding so much less than the amount sought in the fee application. *See McKenna v. City of Philadelphia*, Civ. No. 07–110, 2008 U.S. Dist. LEXIS 76769, 2008 WL 4450223 (E.D.Pa. Sept. 30, 2008). The Court declined to rule on Timothy's request for costs, noting that the Clerk of its Court had not yet taxed costs and that, therefore, under the procedure outlined in Eastern District Local Rule 54.1(b), there was nothing for it to review.

Subsequently, plaintiffs filed an appeal challenging certain aspects of both orders. For the reasons we discuss below, we will affirm the District Court's award of attorneys' fees and its denial of plaintiffs' motion for a judgment as a matter of law or for a new trial and will dismiss the appeal insofar as plaintiffs are seeking costs for the District Court proceedings.[4]

## II. JURISDICTION

■ The District Court had jurisdiction over plaintiffs' section 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction pursuant to 28 U.S.C. § 1291 to review the orders challenged on this appeal, except we lack jurisdiction over the District Court's action in deferring disposition of Timothy's request for it to fix costs. Under the procedures outlined in Fed.R.Civ.P. 54(d)(1) and Local Rule 54.1(b), the Clerk taxes costs, and then, if there is an objection to the Clerk's action, the District Court reviews the Clerk's award. Here, the District Court declined to take any action on Timothy's request for costs because the Clerk had not yet taxed costs. Thus, because neither the Clerk nor the District Court has made any determination of whether Timothy is entitled to costs, let alone settled on the quantum of the costs, there is not a final order on the costs issue for us to review.[5] Therefore, to the extent that Timothy seeks a review of the disposition on his application for costs, we will dismiss the appeal without prejudice to further proceedings with respect to costs in the District Court.[6]

---

**4.** Plaintiffs' notice of appeal recites that they are appealing from the order denying them a new trial or a judgment as a matter of law and from the order awarding attorneys' fees as well as from "rulings made pretrial ... and during trial." App. at 67. Thus, we treat this appeal as encompassing all of the issues raised in their brief, including those that go beyond the three matters the notice of appeal specifically cited. *See Pacitti v. Macy's*, 193 F.3d 766, 776–77 (3d Cir.1999). We note that even though all plaintiffs join in all aspects of the notice of appeal, the three unsuccessful plaintiffs do not contend that they would be entitled to attorneys' fees if we affirm on the substantive disposition of this case in the District Court.

**5.** Defendants concede, citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200–03, 108 S.Ct. 1717, 1721–22, 100 L.Ed.2d 178 (1988), that the costs issue is an "ancillary matter" like a dispute over statutory attorney's fees that "should not undermine the finality of the fee award." Appellees' br. at 2. We agree and apply that principle to the entire appeal.

**6.** In their brief, plaintiffs contend that 28 U.S.C. § 1920 "does not require a request for approval of a Bill of Cost[s] to first go to the Clerk; rather it grants a choice to the prevailing party to ask the Clerk or a Judge of the United States Courts to award the Costs." Appellants' br. at 16. We can understand the

## III. DISCUSSION

### A. Attorneys' Fees

██ We exercise plenary review in considering whether the District Court applied the proper legal standards in determining the fee award, and we review the reasonableness of the fee award for abuse of discretion.[7] *Jama v. Esmor Corr. Servs., Inc.*, 577 F.3d 169, 173 (3d Cir. 2009). We will conclude that there has been an abuse of discretion if a reasonable person could not have adopted the District Court's view of the appropriate amount of an award. *Rode v. Dellarciprete*, 892 F.2d 1177, 1182–83 (3d Cir.1990). We review the Court's factual findings on an attorneys' fee application, "including [the Court's] determination of an attorney's reasonable hourly rate and the number of hours he or she reasonably worked on the case," for clear error. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n. 5 (3d Cir.2005).

██ The District Court awarded fees pursuant to 42 U.S.C. § 1988, which provides that prevailing parties in civil rights cases may be granted "a reasonable attorney's fee." The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). *Hensley* instructs that courts are to exclude from the determination of the lodestar any hours not reasonably expended. Hours subject to exclusion under *Hensley* include those deemed "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. at 1939–40.

██ A court's calculation of the lodestar, however, does not end its inquiry on a fee application. A district court can adjust a fee award upward or downward based upon the results obtained in a case. *Id.* at 434, 103 S.Ct. at 1940. In addition, an attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *See id.* at 434–35, 103 S.Ct. at 1940 (internal quotation marks omitted). Moreover, as we have held, "the District Court has a positive and affirmative function in the fee fixing process, not merely a passive role" and "should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir.2001).

Here, Timothy's trial attorney, Brian M. Puricelli, requested a total fee award of $181,340, comprising $171,040 for 427.6 hours of his own work and $10,300 for 41.2 hours logged by his co-counsel, Theodore M. Kravitz. The City, though entirely successful as an entity, filed detailed objec-

---

basis for that contention, inasmuch as section 1920 provides that "a judge or clerk ... may tax costs." This language, however, merely indicates which officers have the authority to tax costs, and does not grant the prevailing party a choice between the two. We do not believe that Congress intended to preclude the adoption of Fed.R.Civ.P. 54(d)(1) or a comparable district court rule requiring that the clerk make the initial determination of the entitlement to and the quantum of costs. In any event, in the absence of a clear congressional direction, we will not require a district court to follow a procedure that would allow a litigant to determine whether a clerk or a judge must decide the issue.

7. We recognize that a reader might find it strange that we first address the attorneys' fees issue but in doing so we follow the order of the issues that plaintiffs advance in their brief.

tions to the fee petition, in theory on Officer Jericho's behalf, and suggested that an appropriate award would be $19,506.08.[8] After making several sets of deductions and adjustments to the fee request, the Court awarded Timothy a total attorneys' fee of $27,178.75, representing $25,602.50 for Puricelli's work and $1,576.25 for Kravitz's work. Bearing in mind that our review of the Court's award is quite deferential, we now examine its adjustments.

### 1. Deductions for Hours Not Reasonably Expended

■ The District Court began by applying *Hensley* to exclude from the lodestar those hours that were not reasonably expended in the pursuit of Timothy's successful claim, a process that entailed reviewing the time charged, deciding whether the hours set out were reasonably devoted to each of the particular purposes described, and then excluding the hours that were "excessive, redundant, or otherwise unnecessary." *See* 461 U.S. at 434, 103 S.Ct. at 1939–40. *See also Loughner*, 260 F.3d at 178. In making this determination, the Court excluded a substantial portion of the hours the

attorneys billed for preparing the complaint, the proposed jury instructions, and the fee petition after concluding that the fee request included excessive time for these undertakings in light of the nature and quality of the work produced.[9] After reviewing the documents in question and the Court's discussion of them, we cannot quarrel with its finding that some of the time claimed was excessive and was not reasonably expended.[10]

### 2. Adjustments to Hourly Rates

■ After the District Court reduced the hours allowed for the preparation of the complaint and eliminated the hours spent preparing the proposed jury instructions and fee petition, it arrived at a lodestar of 352.1 hours for Puricelli and 28.7 hours for Kravitz. Next, the Court determined a proper hourly rate for each attorney for his different types of work. Based on the rate Puricelli requested, along with his experience and what he had been paid for work on other cases in the same legal market, the Court concluded that Puricelli should receive $400 per hour for work in court and $300 per hour for trial-preparation work.[11] The Court concluded that

8. It well may be that the City will satisfy any judgment against Officer Jericho and so, effectively, filed the objections on its own behalf. As a matter of convenience we will refer to the objections to the fee application as if the City filed them on behalf of all defendants as, indeed, the objections recite.

9. In this regard plaintiffs' attorney originally submitted to the District Court an uncorrected and mistake-filled draft of his fee application. That Court understandably was disturbed by this submission and by what it perceived as counsel's sloppy work throughout the case. We are satisfied that a court can consider the quality of an attorney's filings when fixing fees. Nevertheless, we should not be understood as reaching our conclusion on a punitive basis.

10. Plaintiffs point out that Puricelli is 54 years old "but despite his age it remains that

he, like many fifty, sixty, and seventy-year-olds, (*even those on the bench*) is able to work hard and long hours." Appellants' br. at 34 (emphasis added). We in no way suggest that we believe that Puricelli's age required him to spend extra time on this case, though we acknowledge that at least some judges in their seventies or older have difficulty working the same number of hours or at least with the same efficiency that they worked when younger.

11. These are the precise rates that Puricelli requested that the District Court apply. In making his request, however, Puricelli did not apply the $300 rate to any of his hours, instead achieving the $171,040 figure by multiplying all 427.6 hours by his top rate of $400. Thus, Puricelli's initial fee request was, undeniably, excessive, and his complaints about the stark difference between his request and the District Court's award ring somewhat hol-

$250 per hour was an appropriate rate for Kravitz. In the case of both attorneys, however, the Court decided to award fees at a reduced rate of $150 per hour for 15.8 hours that they spent performing clerical tasks such as faxing, emailing, filing, scanning, assembling, and conforming. Also, because the fee application failed to break down trial time by category to reflect time spent in and out of court, the Court used its own records to estimate the proper separation of time for those periods and awarded fees accordingly.

■■■ In the circumstances confronting the District Court, it was entirely appropriate for the Court to separate time for in-court work, trial preparation, and clerical tasks for compensation at different rates. *See Loughner,* 260 F.3d at 180 ("A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable."). "A District Court's determination of market billing rates 'is a factual question which is subject to a clearly erroneous standard of review.'" *Jama,* 577 F.3d at 180 (quoting *Smith v. Philadelphia Hous. Auth.,* 107 F.3d 223, 225 (3d Cir.1997)). The Court reached a reasonable rate for each of the separate types of tasks performed, amply supported by its findings and well within its discretion, and we see no error in its reductions.

### 3. Reduction for Unsuccessful Trial Claims

■■■ The District Court also made a downward adjustment of the requested fee to reflect Timothy's lack of success on claims distinct from his successful false arrest claim. The propriety of this action

depends upon whether the unsuccessful claims were, in fact, distinct. *Hensley* cautions that courts should not reduce fees simply because some of a prevailing party's *related* claims are unsuccessful. *See* 461 U.S. at 434–35, 103 S.Ct. at 1940. For example, where a plaintiff's claims involve "a common core of facts" or are based on "related legal theories, ... [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435, 103 S.Ct. at 1940. However, where a party brings claims that do not depend on the same sets of facts and legal theories as the claims on which the party has succeeded, fees should not be awarded for work on those unrelated claims because the work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *See id.* (internal quotation marks omitted).

■■■ In a multi-party case, the proper allocation is of critical importance. The District Court must ensure that a partially successful defendant is not required to provide compensation for an attorney's unrelated efforts on behalf of an unsuccessful plaintiff, or in pursuit of the unsuccessful claims of an only partially victorious plaintiff, as section 1988 provides that only a "prevailing party" may be granted a reasonable attorney's fee. Here, of course, inasmuch as only one claim by one plaintiff succeeded in the District Court, the Court faced a difficult task in sorting out the work that was fairly compensable, which could include only the work that reasonably was expended in pursuit of the sole successful claim. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. Moreover, a plaintiff has the burden to establish "that the time spent pursuing the

---

low. In any event, an attorney making a fee application in a statutory fee-shifting case should not be able to use an outlandish application as an initial bargaining position in the

same way that an attorney for a plaintiff in a personal injury case might make a grossly inflated opening demand in negotiations for a settlement.

unsuccessful claims contributed in any way to [his] success on his remaining claims." *Id.*

The District Court determined that Timothy's successful false arrest claim did not share a common core of facts with his own unsuccessful claims or with the other three plaintiffs' unsuccessful claims. Therefore, the District Court ruled that the time spent in pursuit of these unsuccessful claims was not compensable under *Hensley*. *See id.* at 435, 103 S.Ct. at 1940.

In reviewing the District Court's conclusion, we note that the unsuccessful malicious prosecution and First Amendment retaliation claims concerned separate incidents that occurred after Timothy's arrest, and plaintiffs brought them under separate legal theories. On the other hand, the excessive force claims concerned events that were temporally proximate to Timothy's wrongful arrest. Nonetheless, we conclude that the District Court did not abuse its discretion in concluding that these claims did not share a common core of facts with the successful false arrest claim. Establishing relatedness on a claim-by-claim basis in the attorneys' fees context is a fact-intensive determination that rightfully belongs within the District Court's discretion, given the trial court's "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 437, 103 S.Ct. at 1941. Here, the District Court reasonably concluded that Timothy failed to carry his burden to establish that the time spent pursuing the unsuccessful claims contributed in any way to his success on the false arrest claim, and that therefore no fees should be awarded for time spent on those unsuccessful claims.

After reaching this conclusion, the District Court then had to determine what portion of the time billed was attributable to the unsuccessful claims. In the absence of proper records separating time spent on plaintiffs' claims individually, the District Court concluded that one-quarter of the lodestar appropriately reflected the hours the attorneys reasonably expended representing Timothy on his lone successful claim—a reduction which Puricelli contends was arbitrary and mathematical. As the Court acknowledged, "[o]f course, a fee award should not be calculated using a simple mathematical approach based on the ratio between a plaintiff's successful and unsuccessful claims." [12] *McKenna,* 2008 U.S. Dist. LEXIS 76769, at *41, 2008 WL 4450223. It is incumbent on the fee applicant, however, to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

Puricelli did not attempt to omit from his fee petition time spent on unsuccessful claims and failed to maintain records with sufficient specificity to allow the Court to perform this calculation with precision. Nonetheless, rather than merely considering the ratio of successful to unsuccessful claims, the Court compared the time spent on Timothy's deposition and on his claims at trial with time spent on the non-prevailing parties' depositions and claims, and it also took into account the amount of the recovery on Timothy's successful claim. In the absence of specific time entries to indicate how the attorneys spent their time on the distinct claims, the Court reasonably used the information available to it to estimate a proper division of time. In this regard, we cannot say that its findings were clearly erroneous.

---

12. Moreover, as defendants point out, using a strict mathematical ratio of successful to unsuccessful claims would have dictated an adjustment below one-quarter of the lodestar, given that the one successful plaintiff out of four was successful on only one of his three claims.

In sum, we find that all of the District Court's deductions and adjustments were well reasoned and amply supported by the record.

### 4. Defendants' Objections to the Fee Award

 In a statutory fee case, once the fee petitioner "submit[s] evidence supporting the hours worked and rates claimed," *id.* at 433, 103 S.Ct. at 1939, the party opposing the fee application has the burden to challenge the reasonableness of the requested fee. *See Rode*, 892 F.2d at 1183. A district court should not "decrease a fee award based on factors not raised at all by the adverse party."[13] *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir.1989). Timothy claims that defendants voiced "few objections" to his requested fees, and contends that the District Court erred in adopting a method of reaching a reasonable fee award different from the method suggested by defendants. Appellants' br. at 18.

 We find, however, that defendants' detailed objections sufficiently raised the issues that the District Court subsequently addressed. In addition to seeking reduction of the lodestar based on unsuccessful claims, defendants explicitly objected to the excessiveness of the hours spent in light of the quality of the work produced, noting that "Mr. Puricelli's written work, including the complaint, motions, jury instructions, and the instant petition for attorneys' fees, is careless, vague, ambiguous, unintelligible, verbose, and repetitive," and pointing to several specific instances where these filings were inaccurate and confusing. *See* App. at 98. Clearly, defendants' objections were sufficiently specific to provide Puricelli with notice that he should be prepared to defend the hours billed for preparation of the complaint, the jury instructions, and the fee petition, which were the three filings for which the Court deducted hours.[14]

 Defendants made two further requests, asking for a reduction of hours based on the questionable accuracy of the attorneys' time records, and for the District Court to address other specific objections to the total compensation requested by reducing the total hourly rate uniformly to a blended rate of $255. As we held in *Bell*, the type of reduction made by a district court need not be exactly the same as that requested by the adverse party, "as long as the fee applicant is given sufficient notice to present his or her contentions with respect to the reduction that the district court ultimately makes." 884 F.2d at 722. The Court's decision to address defendants' objections by scrutinizing the time records, eliminating excessive hours, and applying task-appropriate hourly rates was well within its discretion.

### B. Review of Denial of Motion for a New Trial, Including Subsumed Arguments

 Although their arguments before this Court primarily have been direct-

---

**13.** Nevertheless it should not be overlooked that the awarding of an attorney's fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its imprimatur to an inappropriate order merely because there was no objection to its entry. *See Thompson v. City of Atlantic City*, 190 N.J. 359, 921 A.2d 427, 430, 441 (2007) (finding that notwithstanding principles of comity, state court had authority to vacate settlement agreement sanctioned by federal court where settlement agreement was "so infected with conflicts of interest that it [was] void as a matter of state law.").

**14.** In fact, defendants argued for a *greater* reduction in hours and a *greater* reduction in total fees than the District Court made, as defendants asked the District Court to make a total award of $19,506.08 as opposed to the Court's award of $27,178.75.

ed towards the issue of attorneys' fees, plaintiffs also appeal the denial of their motion for a new trial, asserting several grounds for error by the District Court. The standard of review on a motion for a new trial is abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case an appellate court's review is plenary. *Curley v. Klem,* 499 F.3d 199, 205–06 (3d Cir.2007). To the extent that this appeal involves review of a summary judgment or the granting or denying of a judgment as a matter of law, we exercise plenary review, *see Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir. 1993), and to the extent that it involves review of evidentiary rulings we use an abuse of discretion standard, *see Acumed LLC v. Advanced Surgical Servs.,* 561 F.3d 199, 211 (3d Cir.2009). As we discuss below, plaintiffs' arguments are without merit.[15]

### 1. Excessive Force Claims

 The District Court properly rejected Timothy McKenna's argument that it should have instructed the jury, which rejected plaintiffs' excessive force claims, that any amount of force used to effect an arrest without probable cause is *per se* excessive.[16] Timothy's statement of the law is unsupported by citation, and, moreover, is wrong. As the Court correctly concluded, the jury was required to review any excessive force claims under a totality of the circumstances test, as enunciated in *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), to determine whether the force used was rea-

sonable. *See Jones v. Parmley,* 465 F.3d 46, 62 (2d Cir.2006).

 The District Court also correctly rejected plaintiffs' argument that they are entitled to a new trial on all of their excessive force claims because they presented evidence to show that force was used against them, whereas defendants did not "present[ ] any lawful basis to use such force against them." Appellants' br. at 46. Although there was in fact evidence that the police did not use excessive force, the Court noted, correctly, that the jury was not required to accept plaintiffs' evidence whether or not contrary evidence was presented.

### 2. Supervisory Liability

 Plaintiffs contend that because they presented evidence that supervisors witnessed relevant misconduct, the District Court erred in granting defendants' motion for judgment as a matter of law on their supervisory liability claims. To be liable in this situation, a supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Here, the only record citation that plaintiffs offer in support of their argument that supervisors witnessed misconduct is Mr. McKenna's testimony that Sergeant Josey was in the vicinity of the arrest at some point after Timothy was handcuffed (i.e., *after* Timothy's arrest). This is not a legally sufficient evidentiary basis for a reasonable jury to find in favor of the

---

**15.** We note that plaintiffs raise certain issues for our consideration only if we "remand for a new trial ... to avoid a waiver of the issues." Appellants' br. at 41. We are puzzled by this statement as some of plaintiffs' contentions if accepted would be grounds for a new trial. Accordingly, we have considered these issues, nevertheless recognizing that our

review may be more extensive than plaintiffs as appellants ask us to make it.

**16.** All plaintiffs brought excessive force claims but only Timothy McKenna could relate the claim to his arrest, as defendants did not arrest the other plaintiffs.

plaintiffs and does not provide us with a reason to reverse the Court's grant of judgment as a matter of law on this issue.

### 3. Exclusion of Police Directives on Use of Force

 Plaintiffs allege that the District Court erred when it excluded evidence of Philadelphia Police Department directives on the appropriate use of force. The Court ruled that even if the directives were relevant, they were subject to exclusion under Rule 403 of the Federal Rules of Evidence, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A trial court is afforded substantial discretion when striking a Rule 403 balance with respect to proffered evidence, *see United States v. Eufrasio*, 935 F.2d 553, 572 (3d Cir.1991), and "a trial judge's decision to admit or exclude evidence under Fed.R.Evid. 403 may not be reversed unless it is arbitrary and irrational," *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir.1990) (internal quotation marks omitted). Here, the Court concluded that the directives had the potential to lead the jury to equate local policy violations with constitutional violations, and that this risk of confusing the issues substantially outweighed the directives' probative value. We do not find that in making this determination the Court abused its discretion. Moreover, plaintiffs could have offered evidence of police practice standards in other ways; for example, plaintiffs had the opportunity to—and did—cross-examine police witnesses about proper police conduct.

### 4. Malicious Prosecution Claim

 Timothy argues that the District Court improperly granted judgment as a matter of law in favor of defendants on Officer Jericho's Fourth Amendment malicious prosecution claim. To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003).

 Timothy contends that the Court made two errors in its disposition of the malicious prosecution claim, but neither contention has merit. First, Timothy argues that the Court erred in basing its dismissal of the claim on insufficient evidence of malice, where defendants' arguments were based on Timothy's failure to establish a deprivation of liberty. However, nothing in Fed.R.Civ.P. 50(a)(2) precludes a court from granting or denying judgment as a matter of law on a basis modified from that which a movant has advanced. Second, although Timothy contends that the Court erred in finding that there was insufficient evidence of malice to support a malicious prosecution claim, he supports this contention only with the vague assertions, without citation, that "the record was replete with sufficient evidence for malice to be found," appellants' br. at 43, and that because the Court charged the jury on punitive damages, "there must have been sufficient evidence of malice in the record," *id.* at 44. Unfortunately for him, he does not direct our attention to the place in the trial transcript of almost 1,000 pages where the evidence to which he refers is located, and we are not aware of any such evidence. Accord-

ingly, faced with wholly unsupported allegations of error, we will affirm the Court's decision on this issue.

### 5. First Amendment Claims

█ Finally, plaintiffs challenge certain evidentiary rulings and jury instructions regarding their First Amendment retaliation claims. First, the District Court properly denied plaintiffs' request to admit, as rebuttal evidence, testimony from a former sergeant from another police district within Philadelphia that he would have permitted videotaping of his operations room. Plaintiffs offered this testimony to rebut the testimony of Sergeant Stoots. The District Court ruled that the proposed rebuttal testimony was not appropriate for that purpose, however, because Sergeant Stoots did not testify that Police Department policy prohibited him from allowing videotaping in the operations room. Sergeant Stoots testified only that, in his 19 years as an officer, *he* never had permitted anyone to videotape in the operations room, and he gave his own reasons for that position (i.e., that the areas being videotaped by the McKennas, which were not in the public area of the 15th District, contained other juveniles who were being held, undercover officers, and paperwork containing officers' names).[17] The Court reasonably concluded that the proffered testimony would not have rebutted this point, and did not abuse its discretion in declining to permit the jury to hear it.

█ Second, the District Court properly rejected plaintiffs' claim that the jury instructions and verdict sheet, by using the term "improper delay" without defining "improper," confused the jury on the issue of retaliation. When the jury asked the Court to define "improper delay," it did so by explaining that "improper" meant "whether or not it was retaliation." App. at 1034. The Court then explained that the reasons for the retaliation could be the videotaping and the prior lawsuit. Overall, the Court's instructions on retaliation and on the meaning of "improper delay" were perfectly clear, and it did not abuse its discretion by denying plaintiffs' request to strike the word "improper."

### IV. CONCLUSION.

We have considered plaintiffs' remaining arguments but reject them as being without merit. In accordance with the foregoing, we will affirm the District Court's orders of September 30, 2008, awarding attorneys' fees and denying plaintiffs' motion for judgment as a matter of law or for a new trial, and will affirm all other orders challenged on this appeal. However, inasmuch as the Court's action in deferring the issue of costs is not ripe for our review, we will dismiss the appeal to the extent that it raises the costs issue.

---

**17.** Though our outcome does not depend on this point, we think that Sergeant Stoots's reasons for not allowing the videotaping were completely reasonable.