NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3040
_____

REGIS INSURANCE COMPANY,
Appellant

v.

A.M. BEST COMPANY, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-10-cv-03171
District Judge: The Honorable Petrese B. Tucker

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 16, 2015

Before: SMITH, JORDAN, and VAN ANTWERPEN, *Circuit Judges*

(Filed:  April 8, 2015)
_____

OPINION*
_____

SMITH, *Circuit Judge.*

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

A.M. Best ("Best") is a rating agency that specializes in rating the financial health of insurance companies. On January 12, 2010, Best issued a press release regarding Regis Insurance ("Regis"), which is the basis of Regis' defamation and commercial disparagement claims against Best. The press release began:

> **A.M. Best Co.** has downgraded the financial strength rating to B- (Fair) from B+ (Good) and issuer credit rating to "bb-"from "bbb-" of **Regis Insurance Company** (Regis) (Wayne, PA). The outlook for both ratings has been revised to negative from stable.
>
> These rating actions reflect the recent disclosure of the lack of financial flexibility at Regis' privately held parent, **Tiber Holding Corporation** (Wilmington, DE), due to that organization's high consolidated financial leverage, lack of access to additional capital and other operating issues.[1]

In November 2009, as part of its annual rating process, Best met with Regis to discuss Regis' financial health. At that meeting, Best requested the financial statements of Regis' parent, Tiber Holding ("Tiber"), which Regis promptly provided. Best's published rating methodology considers the financial condition of parent corporations to be potentially relevant. Although Best claims it had previously requested Tiber's financial statements, it is undisputed that it had not received them. In reviewing Tiber's financial statements, Best learned that Tiber's liabilities exceeded its assets by a factor of 3.5, and that it had a negative net worth

---

[1] Regis also argued that other statements made later in the press release, which did not specifically relate to Tiber, were defamatory. As these statements were not meaningfully discussed in the District Court's opinion from which Regis appeals, or in Regis' brief, they do not provide a potential basis for reversal.

of nearly $45 million. The primary reason was that Tiber owed the Superintendent of Insurance of New York, in its capacity as Liquidator of Nassau Insurance ("Nassau"),[2] nearly $43 million. The $43 million was split between two judgments, with final judgment dates (according to the financial statements) of August 2000 and May 2002; both of which had been accumulating interest.[3]

After multiple levels of internal review at Best, including an appeal by Regis, and conversations between Best and the Pennsylvania Department of Insurance (initiated at Regis' request), a senior rating committee at Best decided to downgrade Regis over "concern[] about [the] uncertainty" surrounding Tiber's financial situation. In fact, given that Tiber was insolvent, guidelines in Best's

---

[2] "Through a subsidiary, Tiber owned Nassau . . . until Nassau was ordered into receivership." *Levin v. Tiber Holding Corp.*, No. 98-8643, 2000 WL 33911225, at *1 (S.D.N.Y. Aug. 14, 2000), *vacated*, 277 F.3d 243 (2d Cir. 2002).

[3] The fallout of the collapse of Nassau has been before this Court twice, with both Richard and Jeanne DiLoreto filing unsuccessful appeals. The DiLoreto couple have owned and controlled Regis, Tiber, Nassau, and a dizzying array of related, largely sham entities. *See, e.g.*, *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002) ("[Richard] DiLoreto admitted, under cross-examination, that he was unaware whether . . . bonds [passed between entities he owned, in an attempt to circumvent a consent decree] . . . were real"). Our prior decisions are *In re DiLoreto*, 266 F. App'x 140, 145 (3d Cir. 2008) (Richard's "failure to disclose his . . . beneficial interests in various corporations and offshore entities, as well as his false testimony . . . is sufficient evidence to support the denial of his discharge [of debt in bankruptcy]"); and *Di Loreto v. Costigan*, 351 F. App'x 747 (3d Cir. 2009) (affirming dismissal of Jeanne's claims that the Superintendent of Insurance of New York's efforts to enforce judgments against her resulted in a violation of her due process rights).

published methodology suggested that Regis should perhaps have been downgraded all the way to a C or a C+ rating (a significantly more severe downgrade than Regis actually received).

However, the District Court denied Best's motion for summary judgment, stating:

> The Court finds that, without providing additional information, analysis, and context, it was misleading for Best to suggest that there had been a *"recent* disclosure of the lack of financial flexibility at Regis' privately held parent, Tiber Holding Corporation." Best's use of the term "recent" implies that something vague and unspecified had happened at Tiber in the last year to render it financially inflexible, and thereby putting Regis at risk. But in reality, Tiber had been insolvent for almost ten years at the time Best published its press release. News of Tiber's financial condition was only "recent" in the sense that Best had recently learned of it. There is a marked and appreciable difference between implying that Regis' parent company is experiencing recent financial difficulties and clearly stating that Regis has been operating for almost ten years *despite* its parent company's financial difficulties (and that Best is only now learning of it).

*Regis Ins. Co. v. A.M. Best Co., Inc.*, No. 10-3171, 2013 WL 775521, at *8 (E.D. Pa. Mar. 1, 2013) (footnote omitted).

The District Court concluded that the press release "implie[d] that something vague and unspecified had happened at Tiber in the last year" by not considering the fact that the press release specified what that "something" was:  the "recent *disclosure* of the lack of financial flexibility."  The phrasing of the press release does not imply that Tiber's lack of financial flexibility was itself recent, and

4

indeed, to the extent that it implies anything other than what it literally says, it implies that the lack of financial flexibility was *not* recent.[4]  Moreover, prior to publishing the press release, Best twice showed Regis draft press releases containing the identical "recent disclosure of the lack of financial flexibility" language of which it now complains.  Although Regis responded by disputing the merits of the downgrade and threatening to sue over the downgrade, Regis never took issue with any of the specific language used in the press release.

After allowing Regis to proceed to trial and present its case for six days, the District Court granted judgment as a matter of law in favor of Best.  The District Court concluded that Regis did not introduce sufficient evidence to allow a reasonable jury to conclude that Best acted with "actual malice" in issuing the press release.  The District Court then denied Regis' request for a new trial.  *Regis Ins. Co. v. A.M. Best Co., Inc.*, No. 10-3171, 2014 WL 2094199, at *1 (E.D. Pa. May 20, 2014).  Regis now appeals.[5]

---

[4] Why else would the press release specify that there was a "recent *disclosure* of the lack of financial flexibility," as opposed to simply stating that there was a "recent lack of financial flexibility?"

[5] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332(a); we exercise jurisdiction pursuant to 28 U.S.C. § 1291.  "We exercise plenary review of the District Court's grant of judgment as a matter of law," *LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003), and review "a motion for a new trial [for] abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case an appellate court's review is plenary." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009).

As there is no dispute that the literal words of the press release were true, Regis pursues a theory of defamation by implication or innuendo. "It is the duty of the court in all cases to determine whether the language used in the objectionable article could fairly and reasonably be construed to have the meaning imputed in the innuendo. If the words are not susceptible of the meaning ascribed to them by the plaintiff, and do not sustain the innuendo, the case should not be sent to a jury." *McAndrew v. Scranton Republican Pub. Co.*, 72 A.2d 780, 783 (Pa. 1950). On appeal, Regis makes no attempt whatsoever to defend the District Court's reasoning that the use of the word "recent" was misleading—instead it simply argues that "[t]he issue of falsity should have been submitted to the jury because the trial court had already determined that the statements in the Press Release were capable of a defamatory meaning at the summary judgment stage." As the words in the press release cannot be properly construed to suggest that the "lack of financial flexibility" was itself "recent," Regis was not and is not entitled to have its claim considered by a jury.[6]

We will affirm the District Court's denial of Regis' motion for a new trial.

---

[6] *See Burton v. Teleflex Inc.*, 707 F.3d 417, 434 (3d Cir. 2013) (under Pennsylvania law, "[w]hether a communication is capable of defamatory meaning is a 'threshold issue' to be determined by the court"); *see also Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 250 (1st Cir. 2000) (appellate courts exercise *de novo* review of whether a statement is capable of defamatory meaning).