NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2056
_____

TAX MATRIX TECHNOLOGIES, LLC;
Appellant

v.

WEGMANS FOOD MARKETS, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-6223)
District Judge:  Hon. Eduardo C. Robreno
_____

Argued on January 11, 2018

Before:  JORDAN, ROTH, *Circuit Judges* and MARIANI[*], *District Judge.*

(Filed June 8, 2018)

Michael H. Rosenthal, Esq.          (**ARGUED**)
Stuart D. Lurie, Esq.
Rosenthal Lurie & Broudy LLC
102 Pickering Way, Suite 310
Exton, PA 19341

      Counsel for Appellant

_____

[*] Honorable Robert D. Mariani, United States District Court Judge for the Middle
District of Pennsylvania, sitting by designation.

Jeffrey J. Harradine, Esq.          (**ARGUED**)
David M. Knapp, Esq.
Daniel P. Purcell, Esq.
Ward Greenberg Heller & Reidy LLP
1800 Bausch & Lomb Place
Rochester, NY 14604

Edward A. Greenberg, Esq.
Ward Greenberg Heller & Reidy LLP
1835 Market Street
Suite 650
Philadelphia, PA 19103

      Counsel for Appellee

_____

OPINION[**]
_____

MARIANI, *District Judge*.

Tax Matrix Technologies, LLC ("Tax Matrix") appeals from the District Court's

denial of its Motion for New Trial on Damages. At trial, the jury returned a verdict in

favor of the plaintiff, Tax Matrix, and against the defendant, Wegmans Food Markets,

Inc. ("Wegmans"), but only awarded Tax Matrix $351,551.86 in damages for breach of

contract when Tax Matrix claimed, and continues to claim, that Wegmans owes it

$1,370,079.25 for a sales and use tax audit defense project that it performed for

Wegmans. We agree with the District Court's analysis and conclusion that Tax Matrix is

---

[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

## I.    Background

On May 15, 2009, Tax Matrix and Wegmans entered into a two page Letter Agreement wherein Tax Matrix "shall examine Client records relating to sales and use taxes for the Tax Periods and, where applicable, apply for Refund(s) and/or assessment reductions for the Client." (App. at 258).  The Agreement defined the term "Refund(s)" as "all amounts recovered through the refund claim process" including "[r]efund(s) and/or reductions of sales and use taxes paid, assessment reductions, interest (or imputed interest, if applicable), and amounts which are credited against another tax liability of the Client." (*Id.*). The Letter Agreement stated that "[i]n consideration for performance of the aforementioned services to the Client, Tax Matrix's fee shall be twenty-five percent (25%) of all refunds." (*Id.*).

On December 12, 2012, auditors for the State of Maryland released a first set of workpapers to Wegmans ("First Workpapers"), listing a total sales and use tax deficiency of $4,639,411.87.  On December 17, 2012, the auditors released a second set of workpapers ("Second Workpapers"), listing a total sales and use tax deficiency of $2,153,430.62.  The difference between the First and Second Workpapers was due to the application of the "developed error factor" to two additional Wegmans stores, located in Columbia and Crofton, to properly determine those stores' asset values.  Melissa Myers, an employee of Tax Matrix, admitted at trial that at the time she received the First Workpapers from Maryland, she did not know what a "developed error factor" was, and as a result, "[b]esides advocating", she played no part in the decrease in amount between the First and Second Workpapers.  (App. at 147, 151).

On February 28, 2013, Maryland released a third set of workpapers ("Third Workpapers"), listing a total sales and use tax deficiency of $1,045,753.62. This new reduced amount was due to the Maryland auditors identifying, and correcting, an arithmetic error contained in the Second Workpapers. Myers admitted that she did not identify that error and only "came later to find out" that there was an arithmetic error. (App. at 153).

In June, 2013, Maryland issued a final audit, assessing a net sales and use tax deficiency of $255,542.82.

In August, 2013, Tax Matrix issued an invoice to Wegmans for $1,370,079.25 for the services it performed in reducing the company's tax deficiency. This amount was calculated by applying a 25% contingency fee to the entire amount of the reduction Tax Matrix asserted it achieved, which was the difference between the amounts listed in the First Workpapers and the final assessment, plus interest. Wegmans refused to pay the invoice, arguing that the three sets of workpapers were not "assessments" and thus the reductions in the workpapers were not "assessment reductions" as used in the definition of "Refund(s)" in the Letter Agreement. As a result of Wegmans' refusal to pay the full invoice, Tax Matrix filed suit in the District Court for the Eastern District of Pennsylvania in October, 2013, alleging breach of contract, or in the alternative, unjust enrichment, by Wegmans for failure to pay Tax Matrix the 25% contingency fee agreed to in the Letter Agreement.

The District Court found the term "Refund(s)" in the Letter Agreement to be ambiguous, denied both parties' motions for summary judgment as to the breach of

4

contract claim, dismissed all of Wegmans' counterclaims, and scheduled the action for trial.

Prior to the trial, the District Court granted Tax Matrix's "Motion in Limine to Exclude Evidence of After-the Fact Contract Re-drafting" (App. at 93), which sought to "exclude evidence that, in January 2013, Jason Frownfelter, a Tax Matrix employee, saw a potential problem with the language of Tax Matrix's standard form contract and then revised that contract" (*id.* at 93 n.2). Frownfelter's email read as follows:

> Guys,
> See the attached Wegmans contract. It references refunds and assessment reduction. I see a potential problem with our contract wording (not necessarily with Wegmans, but overall). For example, with the Wegmans MD audit, we technically are not reducing an actual assessment per our contract……just preliminary findings. Thoughts?

(App. at 460). In response, Michael Espenshade, President of Tax Matrix, replied, in pertinent part, "Let's rewrite our standard agreement over next 2 weeks." (*Id.*).

Despite the District Court's ruling on the motion *in limine*, at trial the Court allowed counsel for Wegmans to introduce the email during Frownfelter's cross-examination for impeachment purposes. The email was published to the jury without objection and marked as Exhibit D-7. During the charge conference, Exhibit D-7 was discussed and the District Court stated that "although it was technically admitted on the argument that the plaintiff's [*sic*] had opened the door to that evidence, I think once the door was opened it was substantive evidence for the purposes of this case." (App. at 202). The District Court explained that "had that not occurred, then perhaps it would have been limited to impeachment." (*Id.*). The Court therefore informed counsel that the

5

exhibit could be used in closing arguments. Wegmans' counsel ultimately only referenced the email in his closing statement with respect to liability.

The District Court bifurcated the trial into a liability phase and damages phase, although no separate evidence was taken for the damages phase of the trial. After deliberations as to liability, the jury found that Tax Matrix's work for Wegmans on the Maryland audit fell within the scope of work contemplated by the Letter Agreement and that Wegmans breached the Letter Agreement by failing to pay Tax Matrix as required by the contract. Following additional closing arguments, the jury deliberated with respect to damages. In its closing argument addressing damages, Tax Matrix requested that the jury award $1,370,079.25, the full amount of the August 2013 invoice, which represented 25% of the amount reduced from the First Workpapers to the final assessment, plus imputed interest. Wegmans countered that Tax Matrix was only entitled to $228,631.68, which it submitted was 25% of the difference between the amount that would have been on the preliminary workpapers in the absence of the auditors' mistakes which were not noticed by Tax Matrix, and the final deficiency amount. The jury rejected both suggestions, instead awarding Tax Matrix $351,551.86 in damages.

Tax Matrix filed a motion for a new trial on damages which the District Court denied by Memorandum and Order dated April 19, 2017. Tax Matrix now appeals the District Court's Order denying its motion for a new trial on damages.

## II.    Discussion[1]

On appeal, Tax Matrix first argues that the District Court abused its discretion by denying Tax Matrix's Motion for New Trial on Damages because "the jury's damage award was not reasonable and bore no relation to the evidence presented at trial" (Appellant's Opening Br., at 1).

Because Tax Matrix did not move for judgment as a matter of law at the close of the evidence, it is precluded from now seeking a new trial on the basis that the evidence was insufficient to support the jury's verdict of $351,551.86 in damages.  However, while Tax Matrix may not make a post-trial attack on the sufficiency of the evidence, Federal Rule of Civil Procedure 59 permits Tax Matrix to request a new trial on damages on the basis that the verdict was against the weight of the evidence, as opposed to the sufficiency of the evidence.  *Greenleaf v. Garlock Inc.*, 174 F.3d 352, 364-65 (3d Cir. 1999).  A new trial on the basis that the verdict was against the weight of the evidence is only appropriate "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).  "Unlike a sufficiency of the evidence claim, when a court evaluates a challenge to the

---

[1] The District Court had diversity jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

A District Court's ruling on a motion for a new trial is reviewed for abuse of discretion, except where the District Court's denial of the motion is based on an application of law, in which case this Court's review is plenary. *Curley v. Klem,* 499 F.3d 199, 206 (3d Cir. 2007); *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1167 (3d Cir. 1993). We apply an abuse of discretion standard when reviewing a District Court's evidentiary rulings. *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009).

weight of the evidence it does not view the evidence in the light most favorable to the verdict winner, but instead exercises its own judgment in assessing the evidence." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 309 n.18 (3d Cir. 2007).

Tax Matrix's arguments fail to demonstrate that the jury's verdict was against the weight of the evidence or that the jury's verdict resulted in a miscarriage of justice. Nor can the verdict on the record be said to cry out to be overturned or to shock this Court's conscience. Tax Matrix asserts that because the jury found that the Letter Agreement applied to Tax Matrix's reductive work on the Maryland audit, the only logical starting point for calculating Tax Matrix's contingency fee was the amount set forth in the First Workpapers. This argument ignores the fact that the District Court had already found, on summary judgment, that the term "Refund(s)" in the Letter Agreement was ambiguous and was thus a question of fact for the jury. Simply because the jury found that Wegmans breached the Letter Agreement does not mean that the jury was forced to adopt Tax Matrix's definition of "Refund(s)" or the applicable starting point for contingency fee calculation suggested by Tax Matrix. Rather, an assessment of the evidence presented at trial supports a finding that the starting point for calculating the contingency fee can be based upon the reductions for which Tax Matrix was itself responsible, and not those errors that Tax Matrix failed to identify. Here, the jury, having found Wegmans breached the Letter Agreement, found Wegmans owed Tax Matrix $351,551.86, which represented 25% of what it deemed to be the reduction achieved by Tax Matrix.

Although Tax Matrix points to the testimony of several witnesses at trial in support of its position, other witnesses' testimony, including that of Tax Matrix

8

employees Stephen Feathers, Jason Frownfelter, and Melissa Myers, supports the jury's verdict. Stephen Feathers, the individual who negotiated and signed the Letter Agreement on behalf of Tax Matrix, testified that "refunds" was meant "to mean any overall savings that we provided through our reductive services", but that Tax Matrix only expected to receive a contingency fee for reductions it brought about through its own efforts and not reductions from the efforts of others. (App. at 103-104). Jason Frownfelter, Tax Matrix's vice-president of client relations at the time of trial, admitted that Tax Matrix would not get paid a contingency fee on reductions that were not of its own making. (App. at 114) ("We would bill [the client] the contingency fee for that client based on *our* reductive work. It's pretty simple, if *we* don't reduce anything we don't get paid.") (emphasis added). Further, Melissa Myers acknowledged that Tax Matrix did not notice, and was not responsible for, correcting Maryland's arithmetic errors which had inflated the deficiency figures in the first two sets of workpapers, nor was she responsible for the reductions in Maryland's calculation caused by correcting misapplications of the "developed error factor" to two Wegmans stores.

As a result, the evidence of record demonstrated that Tax Matrix was not responsible for the correction of the errors that in turn yielded the majority of the changes between the First Workpapers and the State of Maryland's final assessment. Rather, the evidence presented to the jury demonstrated that the State of Maryland, by the time it issued the Third Workpapers, had identified its own mistakes and corrected them by properly applying the developed error factor to the Columbia and Crofton stores and eliminating its arithmetic errors. In light of the testimony at trial and the ambiguity of the

term "Refund(s)", the jury's determination that the Letter Agreement only provided for Tax Matrix to receive a contingency fee for the reductions for which it was actually responsible, and subsequent determination that Tax Matrix was only entitled to $351,551.86 instead of the $1,370,079.25 claimed by Tax Matrix, was reasonable and cannot be said to shock the conscience or constitute a miscarriage of justice.

Tax Matrix's second argument on appeal is that the District Court abused its discretion by denying its motion for a new trial on damages where the Court had admitted Exhibit D-7 for impeachment purposes only but subsequently permitted Wegmans to use the exhibit as substantive evidence during Wegmans' closing argument.[2]

Pursuant to Federal Rule of Civil Procedure 61, which addresses harmless error, "no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." "[A]n error is harmless if it is highly probable that it did not affect the complaining party's substantial rights." *Betterbox Commc'ns Ltd. v. BB Techs, Inc.*, 300 F.3d 325, 329 (3d Cir. 2002) (citing *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 924, 926 (3d Cir. 1985)); *see also*, Fed. R. Civ. P. 61.

---

[2] To the extent that Tax Matrix also asserts that the District Court erred by first ruling that the emails were inadmissible but later allowed them to be used at trial, it was well-within the discretion of the District Court to alter its prior *in limine* ruling. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Tax Matrix argues that "[t]he District Court's missteps allowed Wegmans to use Exhibit D-7, an email from 2013, as the linchpin of its argument that the First Workpapers did not qualify as an assessment and hence, could not be the starting point for any damage calculation" and that it is therefore "probable that Exhibit D-7, which should not have been admitted as substantive evidence, contributed to the jury's damages verdict." (Appellant's Opening Br., at 19).

Here, even if the Court were to accept Tax Matrix's assertion that the District Court erred by permitting Wegmans to use Exhibit D-7 as substantive evidence during its closing argument, any such error is harmless.

At trial, Tax Matrix employee Frownfelter testified that "preliminary workpapers" were synonymous with "assessments" and that the term "assessment reductions" in the Letter Agreement included reductions from the preliminary workpapers that had occurred during the Maryland audit. (App. at 120-121). Frownfelter testified this interpretation was "pretty much industry standard." (App. at 121). Because Frownfelter's testimony was deemed to have opened the door to the issue which the Exhibit D-7 email addressed, the District Court permitted Wegmans to impeach Frownfelter with his prior statement to the contrary in that email. The email was published to the jury as Exhibit D-7 as allowed by the District Court and without objection by Tax Matrix. No limiting instruction was given by the Court that Exhibit D-7 was only to be considered for impeachment purposes, nor did Tax Matrix request such an instruction. Thereafter, Wegmans' counsel presented the email to Frownfelter and quoted it to him wherein he had stated "we technically are not reducing an actual assessment per our contract, just preliminary findings." (App. at

11

124). When asked whether he still stood by those words at trial, Frownfelter responded in the affirmative.

At the charge conference, the District Court determined that although Exhibit D-7 was introduced on the basis that Frownfelter's testimony had opened the door to its introduction, "once the door was opened it was substantive evidence for the purposes of this case." (App. at 202). The Court added that had this not occurred, "then perhaps it would have been limited to impeachment. But I think now it was before the jury, the jury looked at it, and the witness was questioned about it." (*Id.*). Following this decision, Tax Matrix did not ask for any limiting instruction prior to the jury being charged.

Even if we were to find error in the District Court's admission of Exhibit D-7 as substantive evidence, the difficulty with Tax Matrix's argument is that the jury found the Letter Agreement did apply to Tax Matrix's work for Wegmans on the Maryland audit and that the Letter Agreement was breached by Wegmans. Thus, Tax Matrix's argument that Exhibit D-7 somehow hurt its claim for damages is difficult to reconcile with the fact that the jury did find that the Letter Agreement applied to Tax Matrix's work and entitled Tax Matrix to a contingency fee payment based on the reductions that it was able to secure through its efforts for Wegmans. This fact strongly suggests that the jury afforded Exhibit D-7 little weight. Further, counsel for Wegmans only referenced Exhibit D-7 in his closing argument with respect to liability. Following the jury's verdict finding that Wegmans breached the Letter Agreement, counsel for Wegmans did not reference Exhibit D-7, much less suggest to the jury that the Exhibit was relevant to the issue of damages or should be considered when deciding the amount of damages to be awarded to

Tax Matrix. In fact, Exhibit D-7 does not address who was responsible for what reductions, or portions of reductions, from the First Workpapers through the final assessment, and thus, while relevant to liability, cannot be said to have been of any help to the jury in calculating damages. Finally, as discussed above, there was other and sufficient evidence in the record to support the jury's damages award without reference to, or need for, Exhibit D-7. In light of the other evidence presented at trial, any error in admitting Exhibit D-7 as substantive evidence was harmless.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's Order of April 19, 2017, denying Tax Matrix Technology, LLC's Motion for New Trial on Damages.