**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2439
_____


JOSHUA TAYLOR,

Appellant

v.

POLICE OFFICER LARRY SHIELDS


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-13-cv-02241)
Magistrate Judge: Honorable David R. Strawbridge[*]

_____


Submitted under Third Circuit L.A.R. 34.1(a)
on April 17, 2018

_____


Before: GREENAWAY, JR., RENDELL, and FUENTES, *Circuit Judges*

(Opinion filed: July 31, 2018)
_____

**O P I N I O N**[**]
_____

_____

[*] Sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).
[**] This disposition is not an opinion of the full Court, and pursuant to I.O.P. 5.7, does not constitute binding precedent.

**RENDELL,** *Circuit Judge*:

Joshua Taylor challenges the Magistrate Judge's denial of his motion for a new trial in his § 1983 excessive force action against the Defendant, Police Officer Larry Shields. Taylor contends that he is entitled to a new trial on three grounds: (1) the Magistrate Judge failed to bar the Defendant's expert from testifying; (2) the Magistrate Judge unfairly prevented him from offering certain impeachment evidence against the expert; and (3) the Magistrate Judge unfairly precluded him from admitting the Philadelphia Police Department's off-duty policy into evidence.

Because the Magistrate Judge did not abuse his discretion in denying Taylor a new trial on these same grounds, we will affirm.

## I. Jurisdiction and Standard of Review

The parties consented to proceed before Magistrate Judge Strawbridge, who had jurisdiction over Taylor's § 1983 action pursuant to 28 U.S.C. §§ 1331 and 636(c). We have jurisdiction over final orders of the district court pursuant to 28 U.S.C. § 1291.

"The decision to grant or deny a new trial is confided almost entirely to the discretion" of the trial court. *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992). We review the denial of a motion for a new trial for abuse of discretion. *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009). To the extent the appeal involves a review of evidentiary rulings, including the decision to admit or exclude expert testimony, we use an abuse of discretion standard. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). We also review the trial court's case management decisions for abuse of discretion. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012).

## II.     Facts and Procedural History

Taylor and Shields recount contradictory versions of the incident in question. Both versions of the facts involve a confrontation on April 25, 2011, between Taylor, in and around his residence, and Shields, a Philadelphia police officer who was off duty at the time.

### 1.  Taylor's Version

Taylor alleges that he purchased a new firearm, lawfully, around April 25, 2011. **A. 1064–65.** At the time, he was living with his family at 4624 Worth Street in Philadelphia. He avers that on April 25, he walked next door to the home of his neighbors, the Thompsons, to show his new gun to his friend, Sean Thompson. While Taylor was on his way, he made eye contact with Shields, who was wearing plain clothes. **A. 1068–69.** Both parties agree that Taylor's firearm was in plain view on his body. **A. 1072–73, 75.** When Taylor reached the Thompsons, he states that he learned Sean was not home from Sean's wife, Mary Thompson. **A. 1071–72.** Taylor claims that he left the Thompsons' house to walk back to his home about 4 to 5 minutes later, when Shields allegedly approached him, did not identify himself as a police officer, drew his firearm, and began to chase Taylor. **Br. at 4; A. 1078–80.**

Taylor states that he then ran into his home, shut the door, and fell, causing his gun to drop and fall three feet from him. **A. 1080-87.** He claims that he rolled over onto his right side when Shields opened the door, shot Taylor in the chest with Taylor's children present, and ran out. *Id.* Taylor survived.

Mary Thompson testified that she observed Shields run into Taylor's home with a gun, so she rushed to Taylor's house and found him lying on the floor, having been shot, attempting to stand up. **A. 1737–40.** Taylor acknowledged that Shields called 911, but claims that the call was made five minutes after he was shot, rather than immediately.

### 2. Police Officer Shields' Version

Officer Shields was allegedly helping his sister move on April 25, 2011. **A. 897-901.** Unfamiliar with the neighborhood, he saw Taylor leave 4624 Worth Street—which he did not know was Taylor's residence—with a handgun in one hand and an ammunition magazine in another, walk into the house next door, and leave only a few seconds later, holding a loaded gun. **A. 953–57.** Shields alleged that he was concerned that Taylor posed a threat, **A. 955–57**, and avers that as a police officer, he was required to investigate further. When Taylor emerged from the Thompsons' house, Shields claims to have said, "My man, stop. Police," without displaying a badge. A. 972–73. But, Shields alleges, when Taylor heard Shields say "Police," he ran into 2624 Worth Street with a gun, and Shields followed him. **A. 986–87.** Shields claims he was concerned that Taylor might pose a threat to someone inside the home. **A. 1013–14.** When he approached the doorway, Shields states, Taylor was pointing a gun at him. **A. 958, 964.** Shields admits that he fired a shot at Taylor, and claims it was in fear for his life. **A. 958, 1013.** He then returned to his sister's place, where he and his sister both called 911. **A. 944.**

## III. Procedural History

Taylor sued Shields under § 1983 for one count of using excessive force. As the parties are familiar with the trial timeline, we summarize in brief.

4

Before the deadline for pre-trial motions, Officer Shields identified Dr. Jonathan L. Arden, a forensic pathologist, as his defense expert. Shields intended to present Dr. Arden to testify on the bullet trajectory from Shields' firearm into Taylor's body. He later served Dr. Arden's expert report on Taylor's counsel. However, Taylor filed a motion *in limine* to exclude Dr. Arden three months after the deadline, without an explanation for the delay. He argued that Dr. Arden, a forensic medical examiner, was unqualified to opine on ballistics technology. The Magistrate Judge denied the motion and allowed Dr. Arden to testify.[1]

At trial, Taylor introduced multiple witnesses who testified that the bullet path may have been consistent with Taylor's account of the shooting, or otherwise that the evidence did not conclusively demonstrate the bullet path, one way or another. Dr. Arden opined that the evidence was consistent with Shields' version of the events. Taylor also sought to impeach Dr. Arden with evidence of his resignation from a prior job, which the Magistrate Judge did not allow.

The jury returned a verdict for Officer Shields, concluding that his use of force against Taylor was justified. Taylor timely moved for a new trial, with the same arguments as he sets forth in the present appeal: the Magistrate Judge erred in (1) allowing Dr. Arden to testify, (2) excluding impeachment evidence against him, and (3) barring the admission of the Philadelphia Police Department's off-duty policy. After briefing and argument, the Magistrate Judge denied Taylor's motion for a new trial. **A.5.**

---

[1] Taylor filed a *Daubert* motion disguised as a general motion *in limine*, but past the pre-trial deadline for *Daubert* motions.

## IV.  Analysis

### 1.  Dr. Arden

Officer Shields introduced Dr. Arden to opine on Taylor's position when he was shot. Given the relative distance between Taylor and Shields, and given the downward path of the bullet inside Taylor's body, Dr. Arden concluded that Taylor would have either been standing up or sitting up at a 90 degree angle when Shields shot him. **A. 29.**

Taylor makes two objections to Dr. Arden's expert testimony: (i) he contends that the Magistrate Judge erred in denying his untimely *Daubert* motion because Dr. Arden was unqualified under Rule 702 of the Federal Rules of Evidence to testify on ballistics and because his opinion was unsound; and (ii) Taylor objects to the Magistrate Judge's ruling that barred him from offering certain impeachment evidence against Dr. Arden. We review the Magistrate Judge's rulings for an abuse of discretion.

First, the trial court was within its discretion under Rule 16(b) of the Federal Rules of Civil Procedure to enforce its scheduling order and therefore deny Taylor's *Daubert* motion as untimely. *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650–51 (3d Cir. 2007) ("This Court and others have frequently upheld a trial court's exercise of discretion to deny a party's motion to add experts or other fact witnesses after the close of discovery or after a deadline in a scheduling order."). Moreover, Taylor offered no explanation for the tardiness of his motion by three months.

Additionally, the Magistrate Judge initially dismissed Taylor's *Daubert* motion as untimely, but later, in his opinion denying Taylor a new trial, the Magistrate Judge explained his decision at length. He acknowledged that in spite of enforcing pre-trial

6

deadlines, he did not neglect his underlying gatekeeper duty, namely, to ensure that Dr. Arden's expert testimony met the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In rejecting Taylor's objections to Dr. Arden's credentials, the Magistrate Judge appropriately explained that Dr. Arden—a forensic pathologist with decades of experience—was eminently qualified to opine on the path between Officer Shields' bullet and Taylor's body. Dr. Arden, a trained anatomic and forensic pathologist, has testified as an expert witness hundreds of times on the very topic of "bullet trajectories within bodies, including the assessment of the relative positioning between a gun and the person shot by the gun." A. 23–24 (quoting Arlen Declaration at 6) (emphasis omitted). The Magistrate Judge also rejected Taylor's objections to Dr. Arden's diagrams that demonstrated the path of the gun and depicted why Dr. Arden believed that Shields' version of the events was consistent with the downward path of the bullet in Taylor's body. The Magistrate Judge deemed Dr. Arden's opinion to be based on facts that were testable, scientifically reliable, and formulated with reliable techniques. Upon reviewing

7

Dr. Arden's credentials, data, and scientific analysis, the Magistrate Judge denied Taylor's objections to Dr. Arden's expert testimony.

Although Taylor may have opposed Dr. Arden's analysis, we agree that Dr. Arden met all of the requirements of Rule 702 and *Daubert* to opine on the exact topic in question, and thus the Magistrate Judge did not abuse his discretion in allowing Dr. Arden to testify as an expert. Absent an abuse of discretion, we "will not substitute our own judgment for that of the trial court regarding the admission or exclusion of expert testimony." *Waldorf v. Shuta*, 142 F.3d 601, 627 (3d Cir. 1998).

Moreover, the Magistrate Judge determined that any flaws in Dr. Arden's analysis, such as imprecision in his methodology or assessment, could be addressed on cross-examination and rebutted with other witness testimony. Accordingly, Taylor vigorously cross-examined Dr. Arden and offered multiple witnesses to contradict Dr. Arden's testimony: (i) Mr. Kenneth Katsaris, a police practices expert, opined that the bullet in question could vary in its path within the human body, suggesting that there was no conclusive answer to how Taylor was positioned **A. 1487**; (ii) Dr. Mohammed Irfan Khan, a trauma surgeon who treated Taylor on the day he was shot, opined that the bullet took a strange, spiral path in Taylor's body **A.1235**; and (iii) Lieutenant Steven Nolan, an investigator from the Philadelphia Police Department, testified that because there was no exit wound in Taylor's body and because witnesses gave contradicting accounts of what happened, the Lieutenant was unable to conclude with certainty Taylor's position when he was shot. **A. 1212–14.**

Second, the Magistrate Judge did not abuse his discretion by barring Taylor from offering irrelevant impeachment evidence against Dr. Arden. Taylor sought to introduce the circumstances of Dr. Arden's departure from the Washington Office of the Chief Medical Examiner (WOCME). Dr. Arden was placed on administrative leave following serious accusations of mismanagement and harassment, and resigned.[2] Although Taylor contended that this evidence of workplace safety risk and racial discrimination put Dr. Arden's qualifications and credibility in doubt, the Magistrate Judge disagreed, and also found that this evidence neither met the requirement of Rule 608(b) nor passed the balancing test of Rule 403 of the Federal Rules of Evidence.[3] Rule 608(b) permits courts to allow, on cross-examination, questions about specific instances of a witness's conduct "*if they are probative of the character for truthfulness or untruthfulness*." Fed. R. Evid. 608(b) (emphasis added). Even so, the court may exclude evidence otherwise permissible under Rule 608(b) if its probative value is substantially outweighed by unfair prejudice under Rule 403.

Here, the Magistrate Judge found that Taylor failed to meet his burden under Rules 608(b) and 403. Evidence of Dr. Arden's departure from WOCME had no bearing on his quality for truthfulness: it was relevant not to his qualifications as a forensic medical expert, implicating Rule 702, but to his administrative responsibilities, the

---

[2] WOCME allegedly performed autopsies contrary to certain religious objections, mishandled the storage of bodies, failed to follow the proper procedures for autopsies, and improperly disposed chemicals, among other accusations. In addition, Dr. Arden was personally accused of sexual harassment. **A. 12–13.**
[3] Although the Magistrate Judge noted that Taylor raised this evidence at the eleventh hour, he excluded it on evidentiary grounds. **A. 14.**

Magistrate Judge found, which was not relevant to his expertise in this case. Moreover, this evidence—far more prejudicial than probative—had a high potential to confuse the jury. **A. 17.** We agree. Taylor has not shown that the Magistrate Judge abused his discretion in so ruling, and thus we affirm this evidentiary decision.

### 2. Philadelphia Off-Duty Police Policy

Taylor also sought to introduce the text of Policy 98-1, the Philadelphia Police Department policy that concerns the conduct of off-duty officers. Taylor argues that Shields violated Policy 98-1 by failing to identify himself clearly as a police officer and by delaying calling 911 after he shot Taylor.[4] Taylor sought to use Policy 98-1 to show that Officer Shields used excessive force. While Taylor had referenced 98-1 throughout the trial, the Magistrate Judge later clarified that the policy itself could not be admitted into evidence. Taylor argues that this affected his trial strategy and prejudiced him.

The Magistrate Judge's evidentiary decision was not an abuse of discretion, and Taylor was not prejudiced by this ruling. The Magistrate Judge allowed Taylor to address the *substance* of the policy at length but did not allow the policy itself to be admitted; the Magistrate Judge noted a concern that if the jurors had the text of the policy, the trial could stray from a question of the use of excessive force to one of violating the off-duty policy. We agree that doing so would be to risk "lead[ing] the jury to equate local policy violations with constitutional violations." *McKenna*, 582 F.3d at 461. Taylor had the opportunity to cross-examine Officer Shields at length regarding the off-duty policy and

---

[4] Policy 98-1 directs off-duty officers to avoid getting involved in situations, but if they do, to clearly identify themselves as police, immediately call 911, and remain a witness.

practices, notably, Shields' failure to call 911 leading up to the shooting. Taylor also presented Dr. Katsaris as a rebuttal witness to testify about best police practices. In sum, Taylor was not prejudiced by the ruling barring admission of Policy 98-1 into evidence.

## V.     Conclusion

Taylor has failed to show that the trial court abused its discretion in its evidentiary rulings and in denying Taylor a new trial. For the foregoing reasons, we will affirm the Magistrate Judge's denial of a new trial in its entirety.